FREDERICK C. FRIESS, BY JOHN FRIESS, HIS GUARDIAN AD LITEM, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Unblocked railroad frog in a sidewalk at a crossing* [*]*—injury to a pedestrian by — negligence — omission to sound a whistle or bell — no flagman at crossing — questions tending to criminate a witness — statement of ground of privilege to decline to answer — infant's responsibility for negligence.*

In an action against a railroad company, brought to recover the damages resulting from a personal injury alleged to have been sustained by a pedestrian through catching his foot in a frog maintained by the company on its track in the sidewalk of a city street crossed by the track, the evidence showed that the frog was an open one, so constructed that the foot of a passer by was liable to be caught therein, and was used without being blocked or its opening in any manner filled, or any other means being adopted to render it safe for persons crossing the track on the sidewalk, that blocks were extensively used for that purpose, and that there were other means by which, if adopted by the defendant, danger from such frogs could have been easily prevented, and was coupled with evidence tending

———————

[*] See, *ante*, page 196.

to show that the plaintiff, a boy twelve years of age, was not familiar with the crossing, nor with the operation of trains at that point, nor with the purpose and construction of a frog, and was not aware of any danger to be apprehended from passing over it:

*Held,* that the evidence was sufficient to take the case to the jury on the question of the defendant's negligence.

*Spencer* v. *New York Central and Hudson River Railroad Company (ante,* p. 196) distinguished.

A pedestrian upon a street has a right to use its sidewalk, although knowing it to be in an unsafe condition, and, if injured, it is a question for the jury whether he was guilty of any carelessness which contributed to the injury.

Contributory negligence is a question of fact and should be left to the jury, unless it so clearly appears from the circumstances or uncontradicted evidence as to leave no inference of fact in doubt; it is only in very exceptional cases that it can be adjudged as a necessary legal conclusion from the facts found.

Notwithstanding the repeal of the statute requiring the sounding of the whistle or the ringing of the bell when a train is approaching a crossing, it is yet the duty of railroad corporations to run their trains with care and caution, and when approaching a crossing to give some warning by whistle, bell or otherwise, and, therefore, evidence that no such signals were given is admissible in actions against railroad companies for negligence.

Although negligence cannot be predicated on the omission of a railroad company to maintain a flagman at a crossing, where it is under no legal obligation so to do, still the fact of such omission may be admissible, in evidence against a railroad company, as bearing on the question whether the act of the company, alleged as the cause of an accident, was negligent or not in view of the absence of a flagman.

A physician, a witness for the plaintiff, was allowed, under objection, to answer the following question: " Besides the accident, was there any other cause that would account for this condition of the (plaintiff's) head."

*Held,* that when addressed to a witness qualified to answer it, being a physician who had attended the plaintiff and knew all his symtoms and his condition, the question was properly admitted.

When the trial court can percieve that a question put to a witness would have a tendency to criminate him, it is its duty to inform the witness of his privilege and to sustain him in declining to answer.

It may be that where a question does not disclose any ground for apprehension the party putting it may be entitled to have the ground of the privilege stated by the witness, at least sufficiently to enable the court to see how the answer might fairly and reasonably tend to criminate him, but no such necessity exists where it is readily seen and clearly understood by the court, and by the party putting the question, that an answer thereto would tend to convict the witness of a crime as, *e. g.,* where the question is whether the witness had, on a certain occasion, admitted committing perjury.

The refusal of a trial court to compel a witness to specify the ground upon which he claims the privilege to decline to answer a question put to him on cross-

examination, an answer to which might tend to criminate him, is, at most, a harmless error and does not furnish a ground for reversal.

The question, at what age an infant's responsibility for negligence may be presumed to commence, is not one of fact but of law, and, in the absence of evidence tending to show that a boy twelve years of age was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track that an adult would, he must he deemed *sui juris* and chargeable with the same measure of caution as an adult.

The degree of care required by the law of a person crossing the track of a railroad depends upon the maturity and capacity of the individual, under all the surrounding circumstances, and if there is any doubt as to the facts or the inferences to be drawn from them the question must be submitted to the jury.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court, entered in the Onondaga county clerk's office November 20, 1891, on the verdict of a jury for $5,000, rendered at the Onondaga Circuit, and from an order denying the defendant's motion for a new trial made on the minutes of the trial judge, and entered in said clerk's office on or about October 27, 1891, in an action to recover damages for personal injuries sustained by the plaintiff, and alleged to have been caused by the negligence of the defendant.

*F. H. Hiscock*, for the appellant.

*P. B. McLennan*, for the respondent.

MARTIN, J. :

The accident which was the subject of investigation on the trial of this action occurred on the 24th day of May, 1889. It happened at a point where the tracks of the defendant's railroad cross Williams street, which is one of the public streets of the city of Syracuse, and extensively used for the passage of teams and foot passengers. At this place the tracks of the defendant extend in an easterly and westerly direction, crossing Williams street at nearly right angles. There was a plank sidewalk on the west side of the street which crossed the railroad track. In this sidewalk, and within the bounds of the street, the plaintiff had placed a frog to connect the main track with a side track, which deflected from the main track at that point. The frog was an open one, and so constructed that the foot of a person passing over the sidewalk was liable to be caught therein. It was used and operated by the defendant without being blocked,

or the opening in any manner filled, or any other means being adopted to render it safe for persons crossing its tracks on the sidewalk. The plaintiff, at the time of the accident, was twelve years of age. He resided with his parents on Williams street, a little north of the crossing. He had resided there only about ten days. Before that he lived in Schoharie county. The evidence tended to show that the plaintiff was not familiar with this crossing, nor with the operation of the defendant's trains at this point, and that he was unacquainted with the purposes and construction of a frog, and was not aware of any danger to be apprehended from passing over it. At the time of the accident the defendant was backing a tender and engine easterly, moving a train of about twenty-one cars from the Soda Ash Works, which was located about a mile westerly from Williams street.

The evidence introduced by the plaintiff was also to the effect that while passing along the sidewalk on Williams street over defendant's track, he caught his foot in this frog and was unable to remove it ; that while in this situation the tender of the defendant's train struck him, knocked him down between the rails and under the train, and that he was dragged along the tracks from this point easterly, a distance of about 1,000 feet, where the last car of the train passed over his leg, so crushing it that it became necessary to amputate it above the knee ; and that he also sustained other injuries. In going this distance the train passed two other streets where the crossings were planked, so that the planking was even with the surface of the rails.

This action was for negligence. The negligence charged was the maintenance in the sidewalk of this frog and the rails and appliances connected therewith in a manner which rendered them dangerous to persons passing. How this accident happened was the question chiefly litigated on the trial. The plaintiff claimed that it occurred as already stated. This frog was not blocked, or so constructed as to provide against accidents of this kind, although the evidence disclosed not only that blocks were extensively used for that purpose, but that there were other means by which such an accident could have been easily prevented if adopted by the defendant.

On the other hand, the defendant contended and introduced evidence which tended to show that the plaintiff was engaged in stealing

a ride at the time of the accident, and that his injury resulted from his falling from the train and being run over by the cars.

The jury found for the plaintiff. The evidence was conflicting. If the jury believed the evidence given in support of the plaintiff's theory, it was sufficient to justify it in finding that the accident occurred in the manner claimed by the plaintiff. It may, perhaps, be said that if it occurred in that manner it was unusual, still, we think, we would not be justified in holding that it was either impossible or so improbable as to justify us in determining, as a matter of law, that it could not have occurred in the manner claimed. The question whether it occurred as claimed by the plaintiff, or whether as claimed by the defendant, was for the jury, and its findings should not, we think, be disturbed by us, especially in view of the fact that two juries have already arrived at the same conclusion. A careful study of the evidence contained in the appeal book has led us to the conclusion that the question of the defendant's negligence was a question of fact for the jury.

This case is clearly distinguishable from the case of *Spencer* v. *New York Central and Hudson River Railroad Company*, decided by this court at this term,* as in that case there was no evidence to show that blocks were in general use or proper for the purpose of preventing injury to persons passing over the frogs in a railroad track, or that there were any other means that were in general use or proper, which could have been adopted to prevent such an accident. Moreover, in that case the question arose between the defendant and one of its employees, who, upon entering the defendant's employment, assumed the usual risks of the service and those which were apparent to ordinary observation. In that case the frog was in the defendant's yard, while in the case at bar it was in a public street.

This leads us to the consideration of the question whether the plaintiff was guilty of contributory negligence. A passenger upon a street has a right to use its sidewalk, although knowing it is in an unsafe condition, and if injured, it is a question for the jury whether he was guilty of any carelessness which contributed to the injury. (*Bullock* v. *Mayor, etc.*, 99 N. Y., 654; *Pomfrey* v. *Village of*

---

* Reported, *ante*, p. 196.

*Saratoga Springs*, 104 id., 459.) Contributory negligence is a question of fact and should be left to the jury, unless it so clearly appears from the circumstances or uncontradicted evidence as to leave no inference of fact in doubt. It is only in very exceptional cases that it can be adjudged as a necessary legal conclusion from the facts found. (*Thurber* v. *H. B., M. and F. R. R. Co.*, 60 N. Y., 326; *Massoth* v. *D. and H. C. Co.*, 64 id., 529.) Under the evidence in this case, we think the question whether the plaintiff was guilty of any negligence which contributed to his injury was a question of fact and properly submitted to the jury.

Nor are we disposed to interfere with the order made by the trial court denying the defendant's motion for a new trial. The trial court heard the evidence, saw the witnesses upon the stand, observed their demeanor and manner of giving their testimony and was satisfied with the verdict. As the evidence was conflicting, and entirely sufficient to justify the verdict, we are not inclined to disturb this order.

Neither do we think that it can be said that the verdict was against the weight of evidence. We think it was not. We are of the opinion that the question of the defendant's negligence, and the plaintiff's freedom from contributory negligence, were questions for the jury, were properly submitted to it, and the evidence justified the verdict and judgment entered thereon. It follows, therefore, that, unless some of the exceptions taken by the defendant require a reversal of the judgment, it should be affirmed. This leads us to an examination of the various exceptions taken by the defendant to the admission and rejection of evidence, and to the charge.

The defendant claims that the court erred in admitting evidence that no bell was rung or whistle blown as the train, which ran over the defendant, approached the crossing where he was injured. We think this evidence was admissible. Notwithstanding the repeal of the statute requiring the sounding of the whistle or the ringing of the bell when a train is approaching a crossing, we think it is yet the duty of railroad corporations to run their trains with care and caution, and when they approach a crossing to give some warning by whistle, bell or otherwise, and that, therefore, evidence is admissible to show that no such signals were given. (*Vandewater* v. *N. Y. and N. E. R. Co.*, 32 N. E. Rep., 636, 637.)

On the trial the plaintiff was permitted to show that there was no flagman at the street when this accident occurred. The evidence was objected to, when the court said: " Of course, it cannot be claimed under the law of this State that the company was under any legal obligation to have a flagman at this point. I thi k I will take the evidence." To this ruling the defendant excepted. We do not think the exception well taken. In *Houghkirk* v. *Delaware and Hudson Canal Company* (92 N. Y., 219) the court submitted it to the jury to determine whether, under the circumstances of that case, due care required the presence of a flagman, and whether, for the omission of that precaution, the defendant was chargeable with negligence. This was held error. But in discussing the question in that case it was said: "A railroad company is not bound and owes no duty so to station a flagman, and negligence cannot be predicated of the omission. The fact may be proven as one of the circumstances under which the train was moved, and by which the degree of care requisite in its handling and running may be affected; so that the question never is, whether there should have been a flagman, or one ought to have been stationed at the crossing, but whether, in view of his presence or absence, the train was moved with prudence or negligence." The doctrine of that case, we think, sustains the ruling under consideration.

The plaintiff, under the defendant's objection and exception, was permitted to prove the distance that one standing at the frog could see a train if there were cars standing on the siding, and also the distance if there were no cars there. We find in this ruling no such error as would justify an interference with the judgment.

Dr. Flint, who attended the plaintiff after his injury, was called as a witness, and after testifying to the appearance, nature and character of plaintiff's injury, was asked: " Besides the accident, was there any other cause that would account for this condition of the head ? " [This was objected. to as improper and incompetent; overruled, and the defendant excepted.] The witness answered: " No." As the witness was a physician, had attended the plaintiff, knew all his symptoms and his condition, we think he was qualified to answer the question, and that the evidence was properly admitted.

On the cross-examination of the witness, Emma Vertigan, the defendant's counsel interrogated her as to her having sworn out a

warrant charging a man with having committed a rape on her, as to having seen the district attorney and sheriff, and as to having seen a couple of other men. She was then further examined as follows: "Q. A couple of other men who said that they had been familiar with you at that time? [Objected to as incompetent, immaterial and improper. Objection sustained.] Q. At that time there, in the presence of District Attorney Hancock and Mr. O'Neil here, did you admit that it was not true that Mr. De Rusha had committed a rape upon you, and that you had sworn falsely when you charged him with it? [Objected to as incompetent, immaterial and improper.] The Court: You may answer it if you like. You are not obliged to answer it unless you see fit. Do you decline to answer? A. No, sir. Q. Do you want to answer? A. No, sir. By Mr. Hiscock: Q. You decline to answer that question, do you? You refuse to answer that question, do you? A. Yes, sir. Q. Subsequently this proceeding against this man was dropped? [Objected to as incompetent. Sustained.] Mr. Hiscock: Your honor holds that she can refuse to answer whether she has admitted committing perjury or not? The Court: Yes. [Exception for defendant.] By Mr. Hiscock: Q. Do you refuse to answer that question, whether you admitted then committing perjury, upon the ground that it would disgrace you to answer the question? [Objected to as incompetent.] The Court: I don't think that is proper. [Exception for defendant.] By Mr. Hiscock: Q. Do you refuse to answer that question upon the ground that it would be confessing the commission by you of a crime? [Same objection. Sustained. Exception for defendant.] The Court: I am wrong perhaps in these rulings, and I will recall both of these last rulings. The plaintiff is not in a position to object to her being asked these questions. I overrule the objections to both questions, and instruct the witness she may answer them or not, as she sees fit. [Exception for defendant.] (Question read.) 'Do you refuse to answer that question whether you admitted then committing perjury upon the ground that it would disgrace you to answer the question?' The Court: You may answer that or not, as you see fit. Do you want to answer that question? A. No, sir. (Question read.) 'Do you refuse to answer that question upon the ground that it would be confessing the commission by you of a crime?' By the Court: Do you want to

answer that question? A. No, sir. Mr. Hiscock: I take an exception to each of those rulings. By Mr. Hiscock: Q. Now I ask you to state here any reason why you decline to answer that question, whether you admitted at that time committing perjury? The Court: Q. What do you answer to the question? Do you understand the question? A. Yes, sir. Q. Do you want to answer that? A. No, sir. Q. You don't want to answer that; you don't want to state any reason? A. No, sir. Mr. Hiscock: I ask the court separately to instruct her to answer each of those questions. The Court: I decline to instruct her that she must answer them; I decline to compel her to answer them. Mr. Hiscock: To that refusal I except."

It is an old and well-established principle of the law of evidence, that where it reasonably appears that the answer to a question will have a tendency to expose a witness to a criminal charge, he is not bound to answer. This is so, even where the fact in regard to which he is interrogated forms but a link in the chain of testimony which would convict him, and he is protected without being required to explain how he might be criminated by the answer. In respect to this claim of privilege, there are two extremes which ought equally to be avoided: First. That of requiring from a witness, who has honestly claimed the privilege, any explanation whatever of his reason for refusing to answer, if the court can see how such answer may fairly and reasonably tend to criminate him; and, second, that of permitting a witness to interpose the shield of apprehended peril as a protection against every question which he is disinclined to answer, although there be nothing in the circumstances of the case which, in the least, suggests the danger. (*Youngs* v. *Youngs*, 5 Redf., 506; *People* v. *Mather*, 4 Wend., 232.)

Whether an answer may tend to criminate a witness is a point which the court may determine, under all the circumstances of the case when the protection is plain, without requiring the witness to explain how the effect is to be produced. In cases of this kind, the court must see, from the circumstances and nature of the evidence, which the witness is called upon to give, that reasonable grounds exist for apprehending danger to the witness from being compelled to answer. (Taylor on Ev., § 1457.)

It is said, however, in *New* v. *Fisher* (11 Daly, 313): "Where the answer to a question may tend to criminate or degrade a witness,

it is, undoubtedly, the privilege and duty of the court to instruct the witness as to his legal rights, and the witness then has the right to claim his privilege; but the party seeking the evidence has the right to make the witness claim his privilege, and to the statement by the witness that he refuses to answer because the answer may criminate or degrade him." We seriously doubt the correctness of this rule. We are of the opinion that when the court can perceive that a question put to a witness would have a tendency to criminate him, it is its duty to inform the witness of his privilege, and to sustain him in declining to answer. It may be that where a question propounded does not disclose any ground for apprehension, that the party may be entitled to have the ground of the privilege stated by the witness, at least, sufficiently to enable the court to see how the answer might fairly and reasonably tend to criminate him. Surely no such necessity existed in this case, as the question put to the witness was whether she had admitted committing perjury. That this would tend to convict her of that crime was readily seen and clearly understood by the trial court, and must also have been equally understood by the defendant.

Moreover, if the rule is as claimed by the defendant, and as held in the *New Case* (*supra*), still, we are unable to discover, in the rulings of the trial court, anything that would justify a reversal of the judgment. From the claim of such privilege and its allowance, no inference whatever could be legitimately drawn affecting either party. (*Phelin* v. *Kenderdine*, 20 Penn. St., 354.) Nor could the fact of such refusal have been commented on by counsel, or taken into consideration by the jury in determining the weight to be given to the witness' testimony. (*Rose* v. *Blakemore*, Ry. & M., 382; *Rex* v. *Watson*, 2 Starkie, 158; *Lloyd* v. *Passingham*, 16 Ves. Jun., 59; *Carne* v. *Litchfield*, 2 Mich., 340; *Foster* v. *People*, 18 id., 273; *People* v. *Maunausau*, 60 id., 15.) If the court had compelled the witness to specify the ground on which she claimed her privilege, it would not have legitimately aided the defendant. Therefore, if the rulings were erroneous, the error was harmless, and not prejudicial to any of the defendant's legal rights.

On the trial the defendant, on the re-examination of one of the witnesses, asked the following questions: "In answer to counsel you said you didn't remember of seeing any boys on that day run-

ning along by the train? Yes, sir. What do you mean by that, that it is so frequent that you paid no attention?" The latter question was objected to, and the objection was sustained, to which the defendant excepted. We do not think this exception valid. We know of no principle which would have justified the court in admitting evidence of the fact that boys, other than the plaintiff, frequently ran along by the defendant's trains. We can discover no legitimate purpose for which this evidence was admissible, and think the court properly excluded it.

After the court had concluded its charge, the defendant requested it to instruct the jury " that upon the evidence in this case plaintiff must be held to have been *sui juris* at the time of the accident, and, there-- fore, bound to observe the same precaution and care in crossing the defendant's tracks at Williams street as an adult." To this request the court replied: " The first part of it I charge; but I will have to tell you what it means, perhaps, if counsel desire me to. That term is used to express that condition of a child in which he is old enough to act for himself; and I may state here, incidentally, that the books are vacillating as to that age, between the ages of about five to seven years. This boy was twelve years of age, so that he was clearly, as I charge you, within the rule that he was old enough to act for himself, and, therefore, that negligence can be predicated in his case on his own failure. If it were a question of a child of four or five years of age, then the question would be not whether the child himself was guilty of negligence, but whether his guardian or his father or mother were. In this case this boy was clearly within the rule charging him with personal care. The latter part of the proposition I refuse to charge, to wit, that he was bound to observe the same precaution and care in crossing the tracks at Williams street as an adult. I have expressed the idea with reference to that. Perhaps I had better repeat it. I do not charge you that he was not bound by the same rule as an adult. The defendant asked me to charge that he was. I say, 'no; I cannot do that,' nor, on the other hand, will I charge that he was not; but I leave it to you to say whether, considering his age and the extent of his judg- ment, intelligence and all that, he was of sufficient intelligence and age to be governed by the same rule as an adult. If not, then you apply the rule otherwise. You may, in either event, consider the

fact of his age, intelligence and judgment as bearing upon the question." Subsequently, the defendant made the following request: "I ask your honor to charge that the plaintiff must show affirmatively that he has not the same judgment and discretion as an adult before he can be claimed to be held to a less strict responsibility as to contributory negligence than an adult." To this the court replied : "Yes; I will charge that; that the burden of proof is upon the plaintiff to show that he is of less intelligence than an adult." The defendant's counsel then proffered this further request : "I ask your honor to further charge, that in the absence of evidence tending to show that a boy twelve years old was not qualified to understand the danger and appreciate the necessity for observing the same degree of caution in crossing a railroad track as adults would, he must be deemed *sui juris* and chargeable with the same measure of caution as an adult." To this the court said : "The first part I charge anyway. I have already. And the last part I charge too, it is the same thing ; that the burden of proof is upon him of showing that he comes within that class of young persons who are to be excused from the complete care which is exercised by an adult.' The defendant's counsel then said : "I ask your honor to say that in this case there is no evidence, either direct or circumstantial, which shows that he is of less judgment or discretion than an adult." This the court refused to charge, and the defendant excepted.

It has been held that the question, at what age an infant's responsibility for negligence may be presumed to commence, is not one of fact, but of law. In the absence of evidence tending to show that a boy twelve years of age was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track that an adult would, he must be deemed *sui juris* and chargeable with the same measure of caution as an adult. (*Tucker* v. *N. Y. C. and H. R. R. R. Co.*, 124 N. Y., 308.)

When we examine the charge of the court we find that it not only charged that upon the evidence the plaintiff must be held to have been *sui juris* at the time of the accident, but also charged that, in absence of evidence tending to show that he was not qualified to understand the danger and appreciate the necessity for observing the same degree of caution in crossing a railroad track as adults would, he must be deemed *sui juris* and chargeable with the

same measure of caution as an adult. Thus it will be observed that when all that portion of the charge relating to this question is taken together, the court instructed the jury in accordance with the principle of the Tucker case, and none of the defendant's exceptions to this portion of the charge are valid within the principle of that case, unless the court erred in refusing to instruct the jury that there was no evidence, either direct or circumstantial, which showed that the plaintiff was of less judgment or discretion than an adult.

During the trial evidence had been given bearing upon the history of the plaintiff's life, his experience and knowledge as to railroads, switches and frogs, and he testified that he did not know what a frog was, had never noticed that where the tracks came together they made a sort of angle, and that he had no such knowledge of switches or frogs as would induce him to believe that it was dangerous to walk over them, and other facts were testified to by him bearing upon the question of his intelligence and knowledge in regard to railroads, their tracks and methods of operation. Under the evidence we cannot hold, as a matter of law, that the court erred in refusing to yield to this request. In *Swift* v. *S. I. R. T. R. R. Co.* (123 N. Y., 645), where a girl of fifteen years of age was injured by one of the defendant's trains, it was held that the degree of care required by the law of a person crossing the track of a railroad depends upon the maturity and capacity of the individual, under all the surrounding circumstances. If there is any doubt as to the facts, or the inferences to be drawn from them, the question must be submitted to the jury.

Having examined all the questions to which our attention has been called by the defendant's counsel, either in his brief or on the argument, and having found no error that would require a reversal, the judgment should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order affirmed, with costs.