[No. 15500.   Department Two.—January 3, 1895.]

CHARLES J. HANSEN, an Infant, by JAMES HANSEN, His Guardian ad Litem, Respondent, *v* SOUTHERN PACIFIC COMPANY et al. Appellants.

Negligence—Railroad—Use of Track by Pedestrians—Consent—Evidence—Defective Cattleguard.—In an action against a railroad company to recover for injuries to a child, whose foot had been caught in an alleged defectively constructed cattleguard, and who, while so caught, was run over by a passing train, the question whether or not the plaintiff was upon the track with the consent of the defendant is an ultimate fact going to fix the measure of diligence required of the defendant in determining the question of negligence; and, to show such fact, evidence is admissible that persons living near the track and other people had for years immediately preceding the accident been in the habit of passing back and forth upon that part of the track where the plaintiff was injured.

Id.—Conflict of Evidence.—Where the evidence as to the consent of the railroad to the use of its track by pedestrians is conflicting the conclusion to be drawn therefrom is for the jury.

ID.—CHARACTER OF CATTLEGUARD.—The character, material, and mode of construction of the cattleguard, together with the fact that the plaintiff was caught and held by its blades, may be considered by the jury in determining the question of its safe or dangerous character.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.

The facts are stated in the opinion.

*W. H. L. Barnes,* and *Frank Shay,* for Appellants.

*Joseph Leggett,* and *James G. Maguire,* for Respondent.

SEARLS, C.—This is an action to recover damages for personal injuries alleged to have been sustained by the plaintiff, an infant of the age of about seven years, through the wrongful acts, negligence, and default of the defendants, their agents and servants.

The cause was tried before a jury. Plaintiff had a verdict for ten thousand dollars, upon which judgment was entered in his favor. Defendants appeal from the judgment and from an order denying their motion for a new trial.

The complaint contained two causes of action.

According to the first count or cause of action set out in the complaint the defendant "The Southern Pacific Railroad Company," a corporation, was and is the owner of a railroad, roadbed, track, etc., extending from San Francisco south, to and beyond the southerly limits of the city and county; that the other defendant was and is the lessee of said railroad and operates the same; that said lessee placed and maintained upon said railroad near Thirtieth street, San Francisco, a cattleguard which is described at length and as being so constructed as to be dangerous in character to persons crossing or attempting to pass over the same, all of which was well known to defendants.

That at the place where this "dangerous trap" was placed and maintained it was, and for many years

had been, the custom of the public generally, with the knowledge and consent of defendants, to pass and travel upon and over said railroad, roadbed, and right of way, and turnstiles had, with the knowledge and consent of defendants, been placed in the fences on each side of and inclosing the right of way.

That on the twentieth day of June, 1889, plaintiff, an infant of the age of seven years, with the consent of defendants, entered upon said right of way and track, and, in attempting to pass over said " trap," his foot was caught and firmly held thereby, and a passing train of defendant ran over and crushed his leg, so that amputation was necessary.

The second cause of action states the facts up to and including the statement as to the plaintiff being caught in the cattleguard or *trap*, as it is designated, and then counts upon the wanton and willful negligence of the engineer of defendant as the cause of his injury, stating in apt terms facts tending to show that, but for the gross carelessness of such engineer, the train might have been stopped before reaching plaintiff.

The answer of defendants denies all the material allegations of the complaint.

Upon the close of the testimony on the part of plaintiff defendants moved for a nonsuit upon the grounds:

1. That the evidence failed to show that either the public or the plaintiff ever acquired, with the consent, assent, or permission of defendants, the right to a user of the railroad as a way for travel, or as a playground or place of rendezvous for children.

2. That the evidence fails to show any negligence in the construction, equipment, or maintenance of the cattleguard, in which the foot of plaintiff was caught at the time of his injury; that the track was fenced and barricaded against the passage of animals and human beings.

3. That there is no evidence of negligence on the part of the engineer of defendants' train, but that, on the contrary, it is affirmatively shown that said en-

gineer did all in his power, aided by all the best appliances that machinery and science could furnish, to avoid doing the infant plaintiff any harm.

The motion was overruled, an exception noted, and this action of the court is assigned as error.

The evidence showed without contradiction that from Twenty-fifth street to Thirtieth street, in the city of San Francisco, the railroad of the defendant runs most of the way upon an embankment varying in height from a few feet up to say twenty feet with trestles or bridges under which travel upon the cross streets passed.

The road curves to the left or east going south, and is fenced on both sides with a board fence consisting of posts set in the ground with four boards placed horizontally, and a cap on the top of the posts.

There is a somewhat heavy upgrade going south or toward San Jose, and a reverse curve commences a litle south of Thirtieth street. Just south of Thirtieth street the defendant had placed a cattleguard, the slats or bars of which were of iron or steel, placed with their edges upward, say three inches more or less apart with an excavation of a few inches under them; cross fences ran from the side fences up to the ends of this cattleguard in the usual manner. On or about June 20, 1889, the infant plaintiff, a boy of about seven years of age, was upon the right of way and embankment of defendants' road, and in attempting to cross said cattleguard his left foot passed between the slats thereof, was caught and held, and a south-bound passenger train of defendant, running on schedule time, and, so far as appears, at its regular rate of speed, ran over and crushed the left leg of said plaintiff, so that amputation of the limb was a necessity. The train was stopped, so that only the forward wheels of the engine passed over plaintiff.

There was also evidence tending to show that for a number of years prior to, and up to the time of the accident complained of, a large number of people residing in the vicinity were accustomed to use the embank-

ment and right of way of the railroad as a route over which to pass on foot, and for egress and ingress from and to their homes, and that this user was so general that people could be seen at all hours of the day passing over the said road.

At several points boards were off the fences through which they passed in going to and from the road; that there were between Twenty-eighth and Thirty-first streets two or more turnstiles, two or three gates through the railroad fence, and one place at which stairs were erected over the same. The inference may be fairly drawn from the evidence that hundreds of people daily passed over this portion of defendants' road and right of way on foot, and that such user was known to defendants.

There was evidence tending to show that plaintiff could have been seen, and the fact that he was caught in the cattleguard at a point on the road one hundred and fifty feet north of the position he occupied.

James Hewitt, the engineer in charge of the train by which the injury to plaintiff was occasioned, was called as a witness on behalf of the plaintiff, and testified in substance that he was running at his usual rate of speed, say, eighteen to twenty miles per hour, saw the boy at say a distance of one hundred and fifty feet, but did not discover his predicament until within say fifty feet of him, when he immediately reversed his engine, applied the " emergency stop" (which he described as being the best modern appliance for suddenly stopping a train), and brought his train to a stand just as it passed over the leg of the boy.

To use his language: "There was nothing I could have done that I did not do to stop the train when I saw that he was caught."

The witness testified to always seeing people on the track at and near this point, and described at considerable length the conduct of boys who would stand in front of approaching trains, and then suddenly jump aside, and various antics well calculated to deceive and

distract those in charge of trains, by causing them to believe said boys to be in peril, and all for their own amusement.

The weight of testimony was to the effect that the boy had been playing on and about the track, for nearly an hour before the accident, with two other boys.

Plaintiff, however, denied this, and said in substance that he went to a point near where the accident occurred by previous appointment to meet another boy, failing in which he met and talked with two small girls, looked on at the work of some men employed near the track, and started for home, when he was caught in the guard, where he stood, screamed, and motioned to stop the approaching train, but in vain.

The testimony as to the dangerous character of the cattleguard was confined mainly to a model, and to showing that its slats were elastic, and that plaintiff was caught and held fast by it.

There was also testimony tending to show that defendants had notices posted on or near the railway track, in the vicinity of the accident, forbidding trespassers upon the company's grounds, and requesting parents to prevent their children from attempting to board cars in motion, and to keep them away from the company's grounds.

The contention of defendant is, in substance, that defendants were entitled to the sole and exclusive user of their road and right of way; that having fenced it and forbidden the public to trespass thereon, they had done all within their power to prevent such trespasses, and the fact that many persons continued to intrude upon their right of way did not constitute such persons other than trespassers, and the evidence of such intrusion was not admissible in evidence to prove acquiescence on the part of defendants, and did not, under such circumstances, tend to prove a license to the public to use the right of way.

It seems to us that to say there was no evidence of an invitation on the part of the company to make use of the

track at the point where the accident occurred is to assume the question of fact involved in the case, to assume the very fact which it was the duty of the jury to determine.

That the testimony on this subject objected to by defendant was admissible we cannot doubt. In *Townley* v. *Chicago etc. Ry. Co.*, 53 Wis. 626, it was held to be error to exclude evidence offered to show that persons living near the track, and other people, men, women, and children, had, for years immediately preceding the accident, been in the habit of passing back and forth upon the same pathway, where the plaintiff (a little girl) was hurt by a moving car. *Cassida* v. *Oregon Ry. & Nav. Co.*, 14 Or. 551, is to like effect. *Noyes* v. *Southern Pac. R. R. Co.*, 92 Cal. 285, although differing widely in its facts, involves a like principle. A multitude of cases tending to the same end might be quoted.

We content ourselves with stating the rule thus: The question whether or not the infant plaintiff was upon the road with the consent of defendant was an ultimate fact which went to fix the measure of diligence required of defendant in determining the question of negligence. Had the fact been conceded one way or the other, or established without contradiction, a question of law only would have been involved, but the testimony being contradictory the fact to be deduced therefrom was for the jury under the instruction of the court as to the law applicable. (*Langhoff* v. *Milwaukee etc. Ry. Co.*, 19 Wis. 489; Cooley on Torts, 670; *Noyes* v. *Southern Pac. R. R. Co.*, 92 Cal. 285; *Wilson* v. *Southern Pac. R. R. Co.*, 62 Cal. 172.)

The evidence being properly admitted established a sufficient showing, notwithstanding the fencing of the right of way and notices given by the company, to entitle its submission to the jury. As circumstances indicative of the nonconsent of defendants to the public use of its property as a way for foot travel the facts indicated are potent.

On the other hand the continued user by the public,

coupled with the facilities for such user, such as gates, stairs, and turnstiles, and openings in the fences, long continued, are cogent circumstances tending to an acquiescence in such user; hence the propriety of submitting the question to the jury.

Manifestly, if the jury found in favor of the theory of acquiescence by the company in the use by the public of its track and grounds as a way for travel the character of its cattleguard, as to being dangerous or otherwise, became a factor in the problem.

What it might lawfully do, as against trespassers upon its property to whom it owed no duty, it could not do with impunity to those having rights thereon.

The character, material, and mode of construction of the cattleguard afforded means, coupled with the fact that the infant plaintiff was caught and held by its blades, by which to determine, to some extent at least, the question of its safe or dangerous character in such a place.

In *Railroad Co.* v. *Stout*, 17 Wall. 657, it was said: "That the turntable was a dangerous machine, which would be likely to cause injury to children who resorted to it, might fairly be inferred from the injury which actually occurred to the plaintiff. . . . . When the jury learned from the evidence that he had suffered serious injury by his foot being caught between the fixed rail of the roadbed and the turning rail of the table they were justified in believing that there was a probability of the occurrence of such accidents."

A like inference was deducible from the accident here.

The evidence that the engineer might have seen the boy at a distance of one hundred and fifty feet or more, and might at that distance have determined his situation, afforded some evidence of such negligence as would have rendered defendants liable in certain aspects of the case, coupled with the other facts and circumstances in proof, justified the court below in its denial of the motion for a nonsuit.

Defendants introduced evidence on their part tending to show:

1. That the cattleguard in question was of approved design, well calculated to promote the object of its construction, and that it had received the sanction of leading railway men of the country.

2. That they had kept notices posted on their road warning the public from trespassing thereon; had constantly repaired breaks in their fences only to have them renewed; had nailed up gates, employed special policemen, who with the regular police of the vicinage had labored in vain to keep people, and more particularly boys, from their track and right of way.

As illustrative of the testimony in this behalf, Timothy Sullivan, a section-man on this portion of the road, after testifying at length as to their efforts in keeping the fences in repair, stated as follows:

"A year ago we repaired that fence near the Fairmount School as good as new; carpenters came and repaired it, and as soon as the carpenters repaired it it was cut the following day. It was always repaired according as we see holes. I never kept any account of how many times that hole has been repaired; I know myself sometimes at Twenty-seventh and Dolores streets that we nailed up one gate—one gate that is there—we nailed up every day for three months, and it would be cut in the morning. There was a watchman put there at night, and those nights it was not cut. As long as the watchman remained in sight it was not cut, but as soon as he was away it was cut. I believe there was one thousand feet of lumber lost in repairing of those holes, taking no account of the nails or labor."

The testimony of the policemen was quite full and specific in the detail of their efforts to keep people and especially boys off of the right of way of the railroad.

The most that can be said is that there was a substantial conflict in the evidence on this branch of the case, and, while we might come to a different conclusion from that reached by the jury were the question

submitted to us as an original proposition, we are not authorized for this reason to override the deliberate action of the jury, supported as it is by that of the court before which the cause was tried.

Exceptions are taken by the appellants to the instructions given to the jury on behalf of the plaintiff, and to those refused to be given on behalf of the defendants. These instructions are too lengthy to be reproduced in full. The following will give the scope and tenor of those given on behalf of plaintiff:

If you find from a preponderance of evidence "that the defendants permitted and consented to the use of their tracks and right of way by the public for the purpose of travel along and across the same at the place where the cattleguard was maintained, and that the plaintiff was so using the track and right of way at the time that the injury occurred, then I charge you that the plaintiff was not a trespasser, and the defendants owed him a duty not to obstruct the track and right of way with a dangerous contrivance; and if you further find that the cattleguard was a dangerous trap, and that the defendant knew, or ought to have known, that it was dangerous, you will find for plaintiff on said first cause of action, provided you find that the injury was caused by the said cattleguard without fault on the plaintiff's own part."

The court further instructed the jury in substance that if for more than twenty years the *locus in quo* had been used by the public as a footpath for travel with the knowledge of said defendants and without protest or objection from them, then the jury might infer that such use of the track and right of way was with the acquiescence and permission of defendants.

Upon the second cause of action the instruction was in substance that, if plaintiff was upon the track by the consent and permission of defendants, then they were bound to exercise reasonable care in keeping a proper lookout and otherwise, and if they failed therein, and, by reason of their negligence and without the fault

of plaintiff, he was injured, the jury should find for plaintiff, and that if plaintiff was not on the track or road by permission of the defendants he was a trespasser, and the defendants owed him no duty, except to use ordinary care to avoid injuring him when they discovered him on the track, and if, under such circumstances, they exercised such care the verdict should be for defendants on the second cause of action.

The instructions at which we have glanced, taken as a whole, embodied the law applicable to the case with great clearness, and were in nowise objectionable.

The fault of the instructions asked by defendants and refused by the court, so far as important, steadily assumed the fact that plaintiff was a trespasser, and therein were objectionable.

The other objections raised are not tenable, and the judgment and order appealed from should be affirmed.

BELCHER, J., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

DE HAVEN, FITZGERALD, J., McFARLAND, J.

Hearing in Bank denied.