PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. SIMONS, BY NEXT FRIEND.

[No. 20,882. Filed January 9, 1907. Rehearing denied April 4, 1907.]

1. PLEADING.—*Complaint.*—*Negligence.*—*General Charge of.*—A general charge of negligence in a complaint, is sufficient as against a demurrer. p. 339.

2. SAME.—*Complaint.*—*Negligence.*—*Motion to Make More Specific.*—A complaint for negligence against a railroad company alleging that defendant negligently permitted the throw rail of

the switch and the main track rail to remain open and unblocked, thereby causing plaintiff to get his foot caught therein, and that defendant knowing of the dangerous place, negligently failed to keep a lookout at the rear of its backward moving train, by reason of which plaintiff was injured, is sufficiently specific. p. 340.

3. RAILROADS.—*Licensees.—Dangerous Premises.*—Railroads are under no obligations to mere licensees to keep their premises free from dangers or defects. p. 340.

4. SAME.—*Care toward Persons Invited on Premises.*—Railroad companies must use ordinary care toward persons on their premises by invitation, express or implied, to keep such premises reasonably safe. pp. 341, 345.

5. SAME.—*Invitation to Enter Premises.—Question for Jury.*— Whether a railroad company impliedly invited a person to cross its tracks, where he was injured, is ordinarily a question for the jury. p. 342.

6. APPEAL.—*Complaint.—Evidence.—When Same Questions Presented.*—Where the evidence establishes the allegations of the complaint, determining the sufficiency of the complaint also determines the sufficiency of the evidence to support the verdict. p. 342.

7. RAILROADS.—*Crossings.—Invitation.*—Where a railroad company constructs a crossing and, without objection, permits the use thereof by the public for ten years, the jury is warranted in finding that plaintiff in going upon same was on such crossing by invitation. p. 342.

8. SAME.—*Crossings.—Invitation.—Mutual Advantage.*—A railroad company which constructs a private crossing in a city, thereby avoiding the construction of public street crossings, may render itself liable to a traveler crossing same, as for an implied invitation to cross, where it negligently permits such crossing to become dangerous. p. 344.

9. SAME.—*Unblocked Switches.—Assumption of Risk.—Master and Servant.*—It is not negligence *per se* for a railroad company to maintain an unblocked switch, and the dangers therefrom are usually regarded as assumed by such company's servants. p. 346.

10. SAME.—*Unblocked Switches.—Backing Trains without Lookout.—Question for Jury.*—Whether a railroad company was negligent in maintaining an unblocked switch at a crossing, and in backing, without a lookout, its train over such crossing, thereby injuring plaintiff whose foot was caught in such switch, are questions for the jury. p. 346.

11. RAILROADS.—*Voluntarily Incurring Dangers.*—A traveler who voluntarily and with a full appreciation of the danger incurs the risk of being injured by a defective crossing, takes upon himself the risks incident thereto. p. 347.

12. SAME. — *Incurring Dangers.—Infants.—Presumptions.*—The courts will not presume that an infant, eight years old, noticed an unblocked frog at a crossing where he was injured, or appreciated the danger of getting fast therein. p. 347.

13. EVIDENCE.—*Crossing Railroad.*—It is not reversible error, in an action against a railroad company for backing its train over plaintiff whose foot was caught in an unblocked frog, to permit plaintiff to answer the question whether he could have crossed before the train came if his foot had not been caught, there being no contention of contributory negligence. p. 347.

14. TRIAL.—*Instructions.—How Considered.*—Where the instructions as a whole fairly state the law to the jury, parties have no just cause to complain. p. 348.

15. DAMAGES.—*Excessive.—Loss of Legs.*—A recovery of $20,000, for the loss of both legs, by a boy eight years old, is not excessive. p. 348.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Frank Simons, by his next friend, William Simons, against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment of the Appellate Court affirming a judgment for plaintiff, defendant appeals under §1337j Burns 1901, cl. 3, Acts 1901, p. 565, §10. *Affirmed.*

*George E. Ross,* for appellant.
*John T. Strange, J. F. Charles* and *Dan Dilla,* for appellee.

HADLEY, J.—Appellant appeals from a judgment rendered in favor of appellee for personal injuries alleged to have been caused by the negligence of the appellant. The complaint was in two paragraphs, but there is no controversy but that the verdict rests upon the first. This paragraph was assailed by a motion to make more specific, and by a demurrer for want of facts, each of which was overruled and forms the basis of an assignment. The substance

of the complaint is that appellant's railroad runs north and south through the corporate limits of Gas City, parallel with, and from six hundred to eight hundred feet east of the Mississinewa river. Main and south H streets, in said city, run parallel, east and west, and both cross defendant's tracks at right angles. These streets and crossings are from one-half to three-fourths of a mile apart, and between them are seven other parallel streets, running east and west, all of which, at the west end, abut upon the east line of defendant's right of way, but none of them cross the railroad. South B street is the second street south of Main. The territory on both sides of the railroad is, and has been for some time, occupied by many residences and manufacturing establishments, in which latter places are, and have been for many years, employed a large number of men, women and children, which appellant well knew. The company had a passing track, the south end of which connected with the main track about five feet north of south B street, extended, and about six hundred feet south of Main street, and a switch track, known as the American Window Glass spur, that connected with the passing track about one hundred twenty-five feet north of south B street, extended, and ran thence south parallel with the main track, to a point south of south B street. Beginning about five hundred feet south of Main street on the right of way, on the west side of the main track, a well-defined, much-used pathway began and extended southward along the west side of the railroad, and within the right of way, for about one-half mile. There were three or more well-defined, much-traveled paths that led off from the first named and crossed the railroad to the east, one of which crossed the railroad right of way a few feet north of south B street, extended. In 1892 the company constructed a barbed wire fence on the west line of its right of way, from a point two hundred eighty feet south of Main street, southward to south H street, a distance of more than one-half mile, and in constructing

the fence the company erected gate-posts on each side of said pathway running across the right of way at the west end of south B street, and it has ever since maintained said gateway open for travel along said pathway. No fence was maintained on the east line of the right of way, in the vicinity of south B street, and all of said pathways were open and accessible to the plaintiff and the public. Between said Main and south H streets there were no public crossings over the right of way, and that portion of said city between said streets was at all times thickly populated, and, for the residents thereof to cross the right of way upon a public crossing, it was necessary to go to Main street or to south H street, a distance of from one-half to three-fourths of a mile. Said gateway was constructed and maintained for the purpose of allowing the public to travel through the same and along said pathways, and on said March 9, 1903, and for many years prior thereto, said pathways and gateway had been open, and in continuous use by the public, for travel, and hundreds of men, women and children passed over the same daily, going to and from their work, and going to and from defendant's depot on business. Such use occurred at all hours of the day, and large numbers of children were constantly passing along said pathway along said tracks at the end of south B street. The defendant and its employes had full and actual knowledge of such facts, and especially of the custom of the children in so using said pathways, but the defendant never made any objection to such use, and did not erect any notice, warning the public of danger at said crossings, but acquiesced in, and consented to, such use all of the time. The switch or side-track located near the end of south B street was connected with the main track by a switching device, which switching device was knowingly and negligently maintained and operated by the defendant in a manner extremely dangerous to persons crossing said track or on said side-track, and especially dangerous to children,

in this, that the space between the throw rail of said switch and the west rail of said main track was not blocked, but was left open in such a manner that persons crossing or upon said track would be liable to get their feet caught or fastened between said rails and be in great danger of being run over by the trains of the defendant, which are frequently run over said track. Said switching device could have been blocked in such a manner as to decrease or entirely remove said danger and prevent the danger hereinafter complained of, but it was maintained and operated in said dangerous condition with full knowledge on the part of this defendant. In March, 1903, the plaintiff, a boy eight years of age, of ordinary intelligence, and residing with his father on south B street, near the defendant's right of way, was sent by his parents on an errand, to a house on the west side of the right of way. The plaintiff traveled westward on south B street, until he arrived at the defendant's right of way, and then entered upon said right of way, and traveled westwardly along said beaten path across said right of way and through said gateway. The plaintiff soon afterward, "returning from his errand, entered upon said right of way through said gateway on the west side, and approached said first-named switch as a locomotive-engine with cars attached was backing southward on said window glass spur. While said engine was on the window glass spur the plaintiff attempted to cross the main track on said pathway, and, while so attempting to cross, his foot became fastened between the west throw rail of said switching device and the west rail of said main track, the same not being blocked, as above averred, and he was unable to loosen it, but was securely fastened to said track. Said engine and cars went north on the window glass spur at a slow rate of speed, and passed within ten feet of the plaintiff, and then backed southward on the passing track to enter the main track towards the point where the plaintiff was fastened. Plain-

tiff was in full view of the employes of the defendant, and could have been seen by them after his foot became fastened. The plaintiff began to scream and cry out loudly, so as to attract the attention of persons in the vicinity, and he continued to cry out until he was run over. Such cries could have been heard by the defendant's employes when they were passing along the window glass spur and when they approached him on the passing track. During all of said time plaintiff's body was moving up and down, in his endeavors to release himself, in such a manner as to attract the attention of the defendant's employes, had they been diligent in the performance of their duties. Said engine and cars might have been stopped within a space of thirty feet, but the employes negligently and carelessly failed to keep watch of the track ahead, or be at their posts of duty, but, with knowledge of the dangerous condition of said premises, and of the custom of the children to pass over the same, run said engine and cars over the plaintiff, crushing both of his legs, and necessitating the amputation of the right leg below, and of the left leg above, the knee.

The defendant moved that the court below require the plaintiff to make his complaint more specific, by stating in what respect "defendant knowingly and negligently operated said switching device, * * * and knowingly and negligently maintained said switching device," and "its employes negligently and carelessly failed to keep a watch ahead," and "negligently and carelessly failed to be at their post of duty."

It has often been held by this court that a general charge of negligence is sufficient as against a demurrer, but if a defendant desires a more specific charge he is en-

1. titled to it upon motion, if made in due season. But the rule has its limitations. A plaintiff is required to charge his cause of action in direct and certain terms, yet he is not required to go into an elaboration of details

beyond what is reasonably necessary fully and distinctly to inform the defendant of what he is called upon to meet. *Alleman* v. *Wheeler* (1885), 101 Ind. 141.

The first specification of negligence in the complaint is that the defendant knowingly and negligently maintained and operated, at the place described, a switching device that was extremely dangerous, particularly to children passing along or across the railroad track at that point, in this: that the space between the throw rail of said switch and the west rail of the main track was not blocked, but left open in such a manner that persons crossing the track at that point were liable to get their feet fastened therein. The second specification is that the engine and cars could have been stopped at any time within the space of thirty feet, but defendant's employes, knowing the dangerous condition of the place and the custom of children to pass over the same, negligently failed to keep watch of the track ahead of the backward-moving train, and so ran said cars toward and over the plaintiff.

The maintenance and operation of an unblocked switch knowingly at a much-frequented place, and knowingly backing a train over the place without looking ahead of the moving cars, constitute the negligent acts complained of, and we are at a loss to see how an amplification of details, beyond what is given in the complaint, could increase the defendant's knowledge, or strengthen it in the preparation of its defense. We, therefore, think the court did not err in overruling the defendant's motion to make the complaint more specific.

As we view the complaint, the pivotal point of the demurrer to the first paragraph is whether the facts alleged show the plaintiff to have been on the defendant's tracks, when injured, as a mere licensee or by invitation. If he was there for his own accommodation, though with the consent of the defendant, it should be held that the latter was under no legal obligation to make or

keep the place safe. In such case the former would enter the premises at his own risk and enjoy his privilege with its attendant perils. *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330; *Lingenfelter* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 49; *Indiana R. Co.* v. *Feirick* (1902), 158 Ind. 621.

But if the owner or occupant of real estate goes beyond consent or passive acquiescence, and by positive acts or inducements entices others to come upon or cross 4. his premises at a particular place, he assumes towards the persons moved by his implied invitation the duty of exercising ordinary care to construct and keep the place reasonably safe for the purpose. *Evansville, etc., R. Co.* v. *Griffin* (1885), 100 Ind. 221, 50 Am. Rep. 783; *Hansen* v. *Southern Pac. Co.* (1895), 105 Cal. 379, 38 Pac. 957; *Walker* v. *Windstanley* (1892), 155 Mass. 301, 29 N. E. 518; *Elliott* v. *Pray* (1865), 10 Allen 378, 87 Am. Dec. 653; *Flynn* v. *Central R. Co.* (1894), 142 N. Y. 439, 37 N. E. 514. So, if the plaintiff was led onto the defendant's railroad, where he was injured, by such active conduct of the defendant as was reasonably calculated to induce the belief that anyone having occasion to pass to the other side of the right of way was invited to cross by that particular path, then, if the appellant had not exercised ordinary care to maintain the path in a reasonably safe condition for pedestrians, it should be held liable, unless it appears that the plaintiff was at the time guilty of contributory negligence. It was said by Mitchell, J., in the case of *Evansville, etc., R. Co.* v. *Griffin, supra:* "An owner may not by invitation, either express or implied, induce another to come upon or pass over his premises, without keeping them in such condition of safety as to admit of his passing over by the means designated or prepared without injury, provided he uses due care."

The status of the plaintiff on the railroad at the time of his injury is therefore an important and material inquiry.

From the course of the evidence it is apparent that the case rests upon the theory that the plaintiff was on the premises by the implied invitation of the defendant. Whether this theory is maintainable under the facts and circumstances of this case is generally and properly held to be a question for the jury, to be determined from all of the evidence and legitimate inferences that may be drawn from the facts proved. *Gilbert* v. *Nagle* (1875), 118 Mass. 278; *Taylor* v. *Delaware, etc., Canal Co.* (1886), 113 Pa. St. 162, 8 Atl. 43, 57 Am. Rep. 446; *Scott* v. *St. Louis, etc., R. Co.* (1900), 112 Iowa 54, 83 N. W. 818; *Hansen* v. *Southern Pac. Co.* (1895), 105 Cal. 379, 38 Pac. 957; *Phillips* v. *Library Co.* (1893), 55 N. J. L. 307, 27 Atl. 478; *Chicago, etc., R. Co.* v. *Murowski* (1899), 179 Ill. 77, 53 N. E. 572; *Atchinson, etc., R. Co.* v. *Cross* (1897), 58 Kan. 424, 49 Pac. 599.

It may also be observed that the facts involved are free from any substantial conflict, and are practically the same as averred in the complaint, so that their review will dispose of the questions relating both to the sufficiency of the complaint and to the evidence in support of the verdict.

It is shown that appellant's railroad runs north and south through the center of Gas City, and from Main street to south H street—a distance of more than one-half a mile—there is no established street or other highway crossing over the railroad, though seven intervening streets, coming from the east, abut against the east line of the right of way. The territory on both sides of the railroad, for the entire distance, is thickly populated and occupied with many manufacturing establishments. Prior to 1893 persons desiring to pass from one side of the railroad to the other sought the most convenient place, and, as a result of such elective crossing and travel on the railroad, in 1893 there was on the west side of the railroad right of way, running parallel with the track, a well-worn

and beaten path, more than one-half mile in length, and at divers other places in the distance described were other well-beaten paths crossing the right of way, or putting off from the parallel path to the east or to the west. One of these well-beaten paths left the end of south B street where the same abutted against the right of way, and, running thence westward, crossed the track and right of way a few feet north of the north line of south B street, extended. In 1893 the railroad company constructed a wire fence along the western line of its right of way from a point 280 feet south of. Main street to south H street, a distance of between one-half and three-fourths of a mile, and in making the fence, upon the request of a resident of the west side, the company erected posts on either side of the path running westward from south B street, across the right of way, and thereby constructed an open gateway across the path at that point, which fence and gateway, from the date of construction, the company continued to maintain at the time of the plaintiff's injury. Many persons, as one witness testified, "hundreds of men, women, and children passed daily through said gateway and across the right of way on said path," into south B street, with the knowledge of the defendant, said path crossing the track at the point where the plaintiff was injured.

It may be said that the company in the construction of the fence had some object in view. It could not have been to restrain animals from going onto the right of way. There was no fence on the east side of the road, no cattle-guards, and nothing to prevent stock from passing through the gateway and around the ends of the fence at Main and south H streets. It may be said that it was objectionable to the company for the residents along its road to wander promiscuously and at random across the railroad on errands, and to and from their work, and that it erected the fence as a means of enforcing its discontinuance; and it is not improbable that, while engaged in constructing the

fence, the company realized that the people of the city had an ample remedy to preserve their privileges in crossing the railroad, by forcing public street crossings, and that it was the part of wisdom to provide some reasonable and less objectionable way across, and thereby escape the expense of public crossings, and the odium of forcing persons to go a fourth of a mile, or more, around one end of the fence, or the other.

The gateway was constructed in a direct line to the business part of the city and at a place acceptable to the citizens, as was shown by the previously worn and beaten path. The gateway had been much used for ten years, and many people had been passing through it daily, with the knowledge of the company and without any objection or sign of disapproval.

These facts and circumstances, and the inferences that naturally and properly arise therefrom, were proper subjects for the consideration of the jury, and we are unable to say that they were not warranted in finding that the company constructed and maintained the open gateway as an implied invitation, to all persons desiring to go to the other side of the railroad, to come that way. And that the plaintiff, even though regarded as an adult, having resided in the immediate neighborhood for years, had the right to act upon appearances, and rely upon the belief that he had the right to pass that way. As was said in *Indiana, etc., R. Co. v. Barnhart* (1888), 115 Ind. 399: "An implied invitation may be inferred from some act or line of conduct, or from some designation or dedication." See a large number of cases collected at page 408. 3 Elliott, Railroads, §§1248-1250.

It is a well-established rule that an invitation may also be inferred where it appears that there is a common interest or mutual advantage in the entry, while a

8. license should be inferred where the object is the mere accommodation or benefit of the person using

it. Accepting this doctrine in its fullest sense, we see, in the facts of this case, nothing incompatible with a finding of invitation from mutual advantage. If, by erecting and keeping the gateway open, the company satisfied the citizens, and was thereby enabled to maintain a barbed-wire fence through the city for more than one-half mile, and prevent promiscuous crossing of the railroad over that distance, without providing public street crossings, as might fairly be presumed, then it cannot be said that the company was without benefit and advantage accruing from the maintenance of the gateway, and, taken in connection with the ten years of frequent use, under the notice and without objection from the company, we have a state of facts which presents at least sufficient evidence to sustain a verdict that the plaintiff was on the track by inducement or implied invitation. *Homes* v. *Drew* (1890), 151 Mass. 578, 25 N. E. 22; *Nichols* v. *Washington, etc., R. Co.* (1887), 83 Va. 99, 5 S. E. 171, 5 Am. St. 257; *Taylor* v. *Delaware, etc., Canal Co.* (1886), 113 Pa. St. 162, 8 Atl. 43, 57 Am. Rep. 446; *Davis* v. *Chicago, etc., R. Co.* (1883), 58 Wis. 646, 17 N. W. 406, 46 Am. Rep. 667; *Byrne* v. *New York, etc., R. Co.* (1887), 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512; *Chicago, etc., R. Co.* v. *Murowski, supra; Graves* v. *Thomas* (1884), 95 Ind. 361, 48 Am. Rep. 727.

Is it shown that appellant was guilty of negligence? Assuming that appellee was on the track, when injured, by invitation, and that he was rightfully there in an effort to cross the railroad by the gated path, it follows that we must also assume, as a matter of law, that the company, by the invitation, took upon itself the duty of observing ordinary care in constructing and in keeping the way fit for footmen, and reasonably safe for those who should act upon the invitation, and a failure to discharge this duty to one entitled to protection, to his

injury, will constitute actionable negligence. The negligence charged is the failure to block the frog of the passing switch that lay in the path in controversy, well knowing its dangerous condition, and that a large number of persons, including children, passed over it daily, and also the backing of the cars over the plaintiff, as he was held fast on the track in the switching device, without looking ahead of the backing cars and without taking any precaution to avoid injuring the plaintiff, or other person, who might, by chance, be upon the track at the point in question.

It cannot be said that failure to block a frog, or other dangerous parts of a switching device, is negligence, *per se,* even though such blocking is practicable and will 9. render such place safe. Railroad companies have large latitude in the selection of their methods of doing business upon their own private grounds, and if it is a part of the company's general plan to leave its switches unblocked, and such a custom is approved, and observed by other well-managed railroads, the danger commonly flowing from such unblocked points is generally held to be one of the risks assumed by employes. But there are many exceptional situations, such as affect the public, or expose employes to such unusual perils that they cannot be regarded as assumed. *Louisville, etc., R. Co.* v. *Phillips* (1887), 112 Ind. 59, 2 Am. St. 155.

Each case must stand upon its own facts, and whether it was negligence to leave the frog unblocked at the place where the plaintiff was injured, taking into account 10. the classes and the number of pedestrians that passed over it, and whether, under the facts, it was negligence in the defendant to send the cars back upon the plaintiff without a lookout, were properly sent to the jury. *Friess* v. *New York, etc., R. Co.* (1893), 67 Hun 205, 22 N. Y. Supp. 104, affirmed 140 N. Y. 639, 35 N. E. 892; *Spooner* v. *Delaware, etc., R. Co.* (1889), 115 N. Y. 22,

21 N. E. 696; *Brown* v. *Pennsylvania R. Co.* (1882), 15 Phila. Rep. 321; *Harriman* v. *Pittsburgh, etc., R. Co.* (1887), 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. 507.

Counsel insists that appellant is liable to one who comes upon its premises by invitation, express or implied, only when the injury is occasioned by an unsafe condition, known to the company, and not known to the injured party, and that it is not liable for injuries resulting from a dangerous condition known to both, or that was open and obvious to all comers. The rule contended for, if indeed it can be called a rule, is not applicable to the facts in this case. The contention can only be sustained upon the theory that the plaintiff, with full knowledge and appreciation of the danger, voluntarily encountered it, and thereby took upon himself the risk incident thereto. *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266.

There is nothing in this case to show that the plaintiff either knew or appreciated the danger. He was a child, eight years of age, and we cannot presume that he had even noticed the unblocked frog, or, if he had, that he appreciated the danger of becoming fast in it. See *Goodrich* v. *Burlington, etc., R. Co.* (1897), 103 Iowa 412, 72 N. W. 653.

Appellee was permitted to answer, over objection, the following question: "You may tell the jury whether you could have got across the track when you started across before the train got down there if your foot had not got caught. Yes, sir." While this question, strictly speaking, may not have been a proper question, the action of the court in permitting it to be asked and answered is not reversible error. This is not a crossing case. Appellee was not attempting to cross the track in front of an approaching train, and to take the chance of getting across before the train arrived. If appellee was at-

tempting to cross the track at a place where he had a right to cross it, there is no evidence in the case tending to show that he was guilty of any contributory negligence.

The court very fully instructed the jury upon the rights of a licensee and also upon the right of a person upon the premises of another through an implied invitation.

14. Whether appellee was upon appellant's track at the time of his injury through an implied invitation, was properly submitted to the jury. The instructions given fully covered all the material questions in the case and correctly stated the law. What we have already said upon the question of inducement or implied invitation is applicable to the principal objections made to certain instructions. Taking the instructions as a whole, they were not prejudicial to appellant's right.

Excessive damages is urged as a cause for reversing the judgment. The recovery was $20,000. The plaintiff was a bright, intelligent boy, eight years of age. He

15. lost both of his legs, one in the thigh, the other below the knee. The jury, under a proper instruction, have determined the amount as being a reasonable compensation, and we do not feel warranted in disturbing it.

Judgment affirmed.