[No. 7,331.—In Bank.]

November 23, 1882.

## HORACE WILSON *v.* SOUTHERN PACIFIC RAILROAD COMPANY.

VERDICT—EVIDENCE—NEGLIGENCE.—The verdict of a jury against the defendant in an action for negligence, is conclusive on appeal to the Supreme Court on the question of negligence, and also upon all the allegations in the complaint material to recovery in the action, if there was any evidence to warrant the verdict.

NEGLIGENCE—EVIDENCE—PRIMA FACIE CASE—WAREHOUSEMAN—BURDEN OF PROOF.—A *prima facie* case of negligence is made out against a warehouseman who refuses to deliver property stored with him, upon proof of demand and refusal. Such evidence alone is sufficient to show a conversion by him. But if it appear that the property, when demanded, was consumed by fire, the burden of proof is then on the bailor to show that the fire was the result of the negligence of the warehouseman.

EVIDENCE—POSITIVE—CIRCUMSTANTIAL.—Negligence may be shown not only by direct and positive evidence, but by any circumstances which tend to prove it, or from which it may be reasonably inferred.

EVIDENCE—NONSUIT—NEGLIGENCE.—On a trial before a jury in an action for negligence, a nonsuit should not be ordered by the court unless there is no evidence at all, or a mere scintilla of evidence wholly insufficient for the consideration of the jury, or unless the facts are agreed upon or admitted, and in the judgment of the Court are insufficient to constitute a cause of action.

EVIDENCE—NONSUIT.—In this case the evidence discussed, and *held*: That the motion for a nonsuit was properly denied by the Court below.

EVIDENCE—ADMISSIBILITY.—In an action against a warehouseman for negligence, to recover damages for loss by fire of goods stored with him, evidence which tends to show the condition of the building at the time of the fire, and all the facts and circumstances connected with the fire, are admissible.

ERROR WITHOUT INJURY.—Though the Court below may have erred in denying a motion to strike out part of a pleading as irrelevant, immaterial, and redundant, still, if the facts alleged be proved in the case without objection, or if they be inseparably connected with the evidence, *Held:* Error without injury.

INSTRUCTION—VERDICT.—When the instructions, taken as a whole, fairly submit the case to the jury, the verdict will not be disturbed for mere inaccuracies or errors from which no possible injury could have resulted.

CUMULATIVE EVIDENCE—NEW TRIAL.—The motion for a new trial was properly denied because the newly discovered evidence was cumulative.

EXCESSIVE DAMAGES.—In this case it is not shown that the damages found are excessive, or that they were given under the influence of passion or prejudice.

APPEAL from a judgment against the defendant in the

Superior Court of the County of San Benito, and from an order denying a motion for new trial. Breen, J.

Action against the defendant as warehouseman for negligence. On the thirty-first day of October, 1875, the plaintiff owned and stored with the defendant, in its warehouse at Hollister, in the County of San Benito, sixty-four bales of wool, weighing in the aggregate twenty-two thousand two hundred and seventy-five pounds. On January 5, 1876, the warehouse was consumed by fire and all the wool was burned, except three bales saved uninjured, and about three hundred and seventy pounds in a damaged condition.

There was evidence showing or tending to show that the wool at the time it was burnt was worth thirteen cents a pound, and that the three hundred and seventy pounds after the fire were worth three or four cents a pound. The action was tried before a jury, in April, 1880, and the verdict was for the plaintiff in the sum of three thousand five hundred and eighty-nine dollars and seventy-one cents. As a part of the cause of action the complaint alleged that the defendant was a railroad corporation, duly incorporated, and at the several dates mentioned in the complaint owned and operated a railroad in the County of San Benito, which road ran through the town of Hollister. A motion was made by the defendant in the Court below to strike out all of these allegations, on the ground that they were irrelevant, immaterial, and redundant. The motion was denied, and the defendant presented and filed its bill of exceptions.

On the trial the Court below, on its own motion, after giving the instructions asked by defendant, gave with other instructions the following: "In this case the principal question you will have to determine is this: Was the defendant or its servants guilty of culpable negligence in respect to the burning of the wool? This question you will have to determine from the proofs and circumstances of this case, measured, as they must be, by rules of law, as you have laid down to you.

"As an abstract principle it is somewhat difficult to locate exactly the point where due care ends and culpable negligence begins; but the line must be drawn somewhere.

"In some cases the law exacts the utmost diligence and care,

while in others the rigor of the rule is relaxed, as, for instance, if a warehouseman received for safe keeping or storage a valuable package, known to contain diamonds, he would not be permitted to excuse himself for their loss by showing that he had exercised the same degree of care or diligence in protecting them from loss, as he and ordinarily prudent and careful warehousemen were in the habit of bestowing on less valuable and heavier articles of merchandise, such as are generally committed to the care of warehousemen; so the locality and other surrounding circumstances are frequently important factors to be considered by a jury in actions of this kind. By way of illustration I will say that, at the present time, the law would exact from a warehouseman doing business in a populous city like San Francisco, a greater degree of care and circumspection than from one doing business in a rural town like Hollister; because, judging from the public acts and utterances of certain individuals, it would be reasonable to infer that there is a more disturbed and feverish social condition there than here, and, consequently, the danger to property from riotous acts would be more imminent in the city than in the country; and the person of ordinary care and prudence would be expected to govern himself accordingly, and increase his precautions against loss that might occur from the condition just referred to.

"Precaution should be taken just in proportion to the imminence of probability of harm. There always being of course a fixed and reasonable limit, beyond which none is expected to go with his efforts, and what or where that limit is in this case is a question that you alone have authority to answer. It is a question of fact to be determined from what has been conceded and proved in this case, and in determining this question you may consider any facts and surrounding circumstances of the character just mentioned, and similar ones bearing on the question of negligence, and give to them such weight as in your judgment they may be entitled to.

"The general rule that should apply in cases of this character is: that the same care should be taken as a man of ordinary prudence and caution would manifest in looking to his own interest. But to exonerate the defendant it will not be sufficient for it to show that the same degree of care with

respect to the property in question was exercised as was wont to be bestowed on its own property, unless it appears that that degree was up to the ordinary standard of care and caution.   The standard to which you will refer is, how did the management of the defendant correspond with that of other persons of ordinary care and caution engaged in the same business in this and other communities similarly situated and circumstanced ?

"The testimony in this case does not positively disclose the origin of the fire, but it is insisted by the plaintiff that, whatever it may have been, its origin and destructive progress are attributable to defendant's negligence in these respects: 1. In not keeping a watchman on the premises; 2. In leaving the lower part of the building exposed, so that vagrants or vicious persons could get under it; 3. In not having a proper water supply or connection with the water-works of Hollister; 4. In leaving a lighted lamp on the premises, from which, it is claimed, the fire originated.   These are all questions of fact, that you are to determine from the evidence.   But even if you find that the defendant did, or omitted to do, all the acts that plaintiff complains of, it does not necessarily follow that the defendant was culpably negligent in his conduct.   The question would again recur, were those acts or omissions of that negligent character that in law are called culpable ?   If, then, you find the defendant did, or omitted to do, as he is charged by the plaintiff, and that the acts or omissions were negligent in the sense in which the term is used in this connection, and that in consequence of these acts and omissions the fire originated and progressed until the property in question was destroyed, the defendant is liable to plaintiff for the value of the property lost or damaged.

"You are the sole and exclusive judges of the credibility of the witnesses who have testified before you, and of the weight that is to be given to any testimony offered here."

All the other facts are stated in the opinion of the Court.

*McKisick & Rankin,* for Appellant.

Ordinary care is all that is required of a depositary for the preservation of the thing deposited.   (C. C., § 1852; Wharton on Negligence, § 573.)   If the thing deposited is lost by fire,

the burden of proof is on the plaintiff to show that the fire occurred through the negligence of the defendant. If the depositor demands the thing deposited, and it can not be found, the defendant must exculpate himself. (*Jackson* v. *Sacramento V. R. R. Co.*, 23 Cal. 269; see also 46 N. Y. 271; 6 Wend. 271; 7 Allen, 98; 1 Gray, 263.)

The negligence of the warehouseman must be the cause of the injury. (Wharton, §§ 576–597; *Roberts* v. *Gurney*, 120 Mass. 33; 15 Wall. 537; Shearman & R. on Neg., §§ 8–9.) Proximate cause is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue. (Shearman & R. on Neg., § 10; *Ill. C. R. R. Co.* v. *Benton*, 69 Ill. 174; *Smith* v. *Leavenworth*, 15 Kan. 81; *Scott* v. *National Bank*, 72 Penn. St. 471.) If there be no evidence of negligence, or a mere scintilla of evidence, the Court should grant a nonsuit. (*Cotton* v. *Wood*, 8 C. B. (N. S.) 568; *Brooks* v. *Somerville*, 106 Mass. 271; *Denny* v. *Williams*, 5 Allen, 1; *McCaig* v. *Erie R. R. Co.*, 8 Hun, 599; 104 Mass. 71; *Toomey* v. *L. etc. R. R. Co.*, 3 C. B. (N. S.) 146–150; *Cornman* v. *E. C. R. Co.*, 4 H. & N. 781; L. R., 3 App. Cas. 1155; 99 Mass. 612; *Briggs* v. *Oliver*, 4 Hurl. & Colt. 403; Shearman & R. on Neg., § 11; 49 Cal. 257.)

Here there is no evidence tending to show that the defendant or its servants were negligent, or that its or their negligence was the approximate cause of the injury complained of. We have seen that in a case of this kind, the law will not presume negligence. We have also seen that the law emphatically condemns "surmise and imagination," when the verdict can rest upon nothing else. If, then, presumption, surmise, imagination, be excluded, the plaintiff's case rests alone, upon the facts, that there was a fire, and consequent loss, and the case has not, for the plaintiff, advanced beyond the point where it was when the complaint and answer were read to the Court and jury. We have also seen that "the burden of proof in an action upon negligence, always rests upon the party charging it." * * * And that, "It is not enough for him to prove that he has suffered loss by some event which happened upon the defendant's premises, or even by the act or omission of the defendant. He must also prove

that the defendant in such act or omission violated a duty resting upon him. (S. & R. on Neg., § 12.)

As to the lamp theory: That is without the shadow of a foundation to rest upon; it is purely imagination, and is met and overthrown by the "familiar principle, that negligence being a wrong, will not be presumed, but must be proved by the party charging it and seeking a recovery thereon." And if a presumption is to be indulged in, the presumption is that the servant was negligent while engaged about his own affairs, as it was not shown that he had any duty to perform for his employer, at or near the time the fire occurred. (*Harlan* v. *St. Louis etc. R. R. Co.*, 65 Mo. 22; *First Nat. Bank* v. *Ocean Bank*, 60 N. Y. 278; *Doggett* v. *Richmond etc. R. R. Co.*, 78 N. C. 305; *Hoag* v. *Lake Shore R. R. Co.*, 85 Pa. St. 293; *Gilman* v. *Noyes*, 57 N. H. 627.)

An application of the foregoing plain, incontrovertible rules of law to the facts of this case, would have sustained the defendant's motion for a nonsuit. For the purpose of testing the correctness of the ruling of his honor, the superior judge, we will admit, for that purpose only, that all of the testimony offered by the plaintiff was competent. The testimony goes no further than to show a case of accidental fire, its real origin being wholly unknown.

The averment that defendant owned and operated a railroad was not necessary or proper, and, whether intentional or not, tended to irritate and excite the prejudices of the jury against the defendant. Immaterial matter in a complaint is irrelevant, and the defendant has the right to have it removed. (Code C. P., § 453; *Larco* v. *Casaneuava*, 30 Cal. 565; *Willson* v. *Cleaveland*, id. 200; *Green* v. *Palmer*, 15 id. 414; *Coryell* v. *Cain*, 16 id. 571.)

The charge of the Court, excepted to by the defendant and assigned as error, was manifestly erroneous and improper in this, that after having correctly instructed the jury upon the question of negligence, at the request of the defendant, the entire effect of those instructions was destroyed by introducing into the case hypothetical and contradictory statements, and in allowing the jury to determine the whole case without proper and legal limitations and qualifications applicable to the case on trial; and under the circumstances of this case was too

broad, and without proper qualification, and was error. (*People* v. *Arnold*, 15 Cal. 482.) Although the Court did not literally instruct the jury to "take into consideration all of the case and do equal justice between the parties," an instruction condemned by this Court, in a case of negligence, in *Kelly* v. *Cunningham*, 1 Cal. 367, the Court did say: "You may consider any facts and surrounding circumstances of the character just mentioned and similar ones bearing on the question of negligence, and give to them such weight as in your judgment they may be entitled to."

This, after he had instructed them that they were not to give any weight to certain particular facts unless they found that other facts existed. This was not only contradictory, but tended directly to confuse the jury, and was error. (*Bank of Stockton* v. *Bliven*, 53 Cal. 708; *In the Matter of Estate of Cunningham*, 52 id. 465; *McCreery* v. *Everding*, 44 id. 246; *People* v. *Anderson*, id. 65.) The instruction directly contravenes another principle of the law of negligence, for it authorized the jury, not only to consider all the facts, but to give to them such weight as in their judgment they might be entitled to, no matter how remote the cause of the fire may have been from any negligent act of the defendant. "The law is well settled that in actions for negligence, the damages to be recovered are only those of which the negligent act is the proximate cause," says this Court in *Chidester* v. *Con. P. Ditch Co.*, 53 Cal. 56, where the judgment was reversed for error in the instruction, and also because there were contradictory instructions.

Among other objectionable things, the Court said to the jury: "By way of illustration I will say, that at the present time, the law would exact from a warehouseman doing business in a populous city like San Francisco, a greater degree of care and circumspection than from one doing business in a rural town like Hollister, because, judging from the public acts and utterances of certain individuals, it would be reasonable to infer that there is a more disturbed and feverish social condition there than here, and consequently the danger to property from riotous acts would be more imminent than in the country."

We submit that this was under the circumstances highly improper.

Undoubtedly the general rule is, that a new trial will not be granted upon the ground of newly discovered cumulative evidence, but that the rule has its exceptions, like all other general rules, is quite as well settled. (*Tuttle* v. *Cooper*, 5 Pick. 414; 3 Gra. & Wat. on New Trials, 1063–1064, 1081, 1344.) "A new trial will not be refused solely because the newly discovered evidence is cumulative, if it will make a doubtful case clear." (3 Gra. & Wat. on New Trials, 1063 and 1064; applied in *Hoyt* v. *Saunders*, 4 Cal. 345.) The affidavits offered fall within the rule, they will make a doubtful case clear. It is evident that the jury gave the plaintiff his anticipated or speculative profits, and the verdict should be set aside on that ground. (*Muldrow* v. *Morris*, 2 Cal. 74; *Moody* v. *McDonald*, 4 id. 297.)

*Laine & Lieb,* for Respondent.

McKEE, J.:

The appeal in this case comes from a judgment and order denying the motion of appellant for a new trial in an action to recover damages for the destruction of certain property of the respondent, by a fire caused, as alleged, by the negligence of the appellant and its employees in conducting and managing its warehouse in which the property had been stored.

The case was tried by the Court with a jury, and a verdict was rendered against the appellant. If there was any evidence to warrant the verdict we can not review it on appeal. It is conclusive upon us, not only on the question of negligence, but upon all the allegations in the complaint material to recovery in the action. (*Algier* v. *Steamer Marie*, 14 Cal. 167; *Brown* v. *Brown*, 41 id. 88; *Trenor* v. *C. P. R. R. Co.*, 50 id. 222.) It is, however, contended that there was no evidence to sustain the verdict, and that the Court below erred in denying a motion for a nonsuit.

It was proved on the trial that the respondent had stored in the appellant's warehouse sixty-four bales of wool of a certain value per pound, which, on demand and tender of the storage due upon it, the appellant refused to deliver to the

respondent, assigning, as a reason, that the warehouse and all it contained, except about three bales of wool, which were returned to him, had been consumed by fire.

A *prima facie* case of negligence is made out against a warehouseman, who refuses to deliver property stored with him, upon proof of demand and refusal. Upon such proof alone the burden is on him to account for the property; otherwise he shall be deemed to have converted it to his own use. But if it appears that the property, when demanded, was consumed by fire, the burden of proof is then on the bailor to show that the fire was the result of the negligence of the warehouseman. (*Harris* v. *Packwood,* 3 Taunt. 264; *Beardslee* v. *Richardson,* 11 Wend. 26; *Browne* v. *Johnson,* 29 Tex. 43; *Lamb* v. *Camden and Amboy R. R. Co.,* 46 N. Y. 271; *Jackson* v. *Sac. Val. R. R. Co.,* 23 Cal. 269.)

The negligence of the appellant, as the proximate cause of the loss of the property by fire, thus became the essential fact to recovery; and the burden of proof was upon the plaintiff in the action. It was incumbent on him to prove that the defendant had, by some act of omission, violated some duty, by reason of which the fire originated; or that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted, or contributed to cause or permit, the fire by which the property was destroyed.

Direct and positive evidence of negligence as a fact is not required. Any circumstances which tend to prove it, or from which it may be reasonably inferred, are sufficient. And when such evidence has been given on the trial of an action, it is not for the Court to usurp the disposition of the fact by ordering a nonsuit. Such an order should not be made, unless there is no evidence at all, or a mere scintilla of evidence wholly insufficient for the consideration of the jury, or unless the facts are agreed upon, or admitted, and, in the judgment of the Court, are insufficient to constitute a cause of action. Upon facts admitted, or proved and found, it is the duty of the Court to say what the law applicable to them is. But where negligence, as the essential fact in the case, is disputed, and the evidence of it is conflicting, or consists of circumstances from which inferences may be drawn for or against

it, it is the province of the jury to determine, under instructions by the Court, whether the evidence establishes it as the proximate cause of the injury complained of.

Applying these principles to the record before us, we find there was no error in sending the case to the jury. For the evidence upon which the plaintiff rested went to show that the building, up to the time of the fire, had been used by the defendant as a warehouse and railroad depot, and was in charge of two employees of the defendant, one of whom was its local agent, and the other its warehouse-keeper. In the warehouse, cut off from the northern end of the building, there was adjoining the office and sitting-room of the railroad depot, a bed-room in which the keeper slept every night. The room was about fourteen feet square; its walls were constructed of upright redwood boards, about fourteen feet high, which were lined with cloth and paper. It was occupied with the bed and furniture of the keeper, and on the walls hung his clothes and files of newspapers. On a shelf against one of the partition walls in the warehouse were kept several lamps trimmed and ready for use. On the evening of the fire, the local agent had left the warehouse in charge of the keeper, whose duty it was to "shut up the doors of the warehouse and fasten it up for the night." Having performed that duty, the keeper himself went to supper, and after supper returned to the warehouse. When he returned he went into the office, lit one of the lamps, took it into his bedroom, and set it down on a little stand at the head of his bed, between the window and bed, and about three feet from the window. He remained while he changed his clothes, and dressed himself for the purpose of going out to visit some friends. Having finished his toilet, he locked up and left the warehouse.

What he did with the lighted lamp before leaving is thus stated by himself: "After I had partially changed my clothing, I returned to the office and remained there perhaps half an hour or three quarters of an hour;  *  *  *  I think I extinguished my lamp and went away.  *  *  *  No lamp was burning when I left the depot. When I came out of the office into the sitting-room I turned down the lamp, blew it out, and set it on a little shelf within the office, to the left of

the office door.   *   *   *   I looked at it, saw it was out, and left it." About an hour or so after he had gone the warehouse was afire.

The first person to observe the fire was the proprietor of a hotel, situate about three hundred feet from the warehouse. Seated in the front office of the hotel, looking through the glass window of the door of the office, his attention was arrested by a sudden flash of light, which momentarily lighted up the warehouse and then went out, leaving the warehouse enveloped in smoke. Remarking to some one near him that the warehouse was afire, he ran out and gave the alarm. Those whom the fire alarm drew first to the burning building, discovered, as they ran to it, the fire dropping from about the center of the warehouse, very near to the locality of the bedroom and office; and on reaching the spot, they kicked in the bedroom and office windows, and saw the office filled with smoke and the bedroom afire—the flames running up the partition walls and over the bed.

There is no doubt that the warehouse-keeper had the right to light the lamp, and use it in the bedroom and office before leaving the warehouse; and it was reasonable to infer that a careful use of the lamp would not have set fire to the warehouse. But it would also be a reasonable inference that a negligent use of the lamp might have occasioned the fire; and the question arose whether, under all the circumstances, in connection with the use of the lamp, the warehouse-keeper *was* careless in using the lamp while in the bedroom and office, or in the extinguishment of it before he left the warehouse. If he was careless in its use or extinguishment, and that carelessness caused the lamp to explode or otherwise ignite any inflammable matter near to it which fired the building, the fire would be attributable to the negligence of the defendant.

Now, it was an indisputable fact that the warehouse was fired from some cause; it was also indisputable, that the fire occurred while the warehouse, in which the keeper had been using a lighted lamp, was under the lock and key of the defendant, and soon after the warehouse had been closed by the keeper for the night; and (as the evidence tended to show) the fire originated at, or "very near" the bedroom and office

in the warehouse in which the lamp had been used. It is manifest that these facts and circumstances point, somewhat at least, in the direction of the lamp as the cause of the fire. And even if inferences to be drawn from them as to the origin of the fire were uncertain and controvertible, yet as differences of opinion upon the subject might reasonably exist in the minds of intelligent men, the facts and circumstances were for the consideration of the jury and not for the Court. It was for the jury to determine from them, in connection with the other circumstances in the case, whether the warehouse-keeper used due care in respect to the lamp, its use and extinguishment; and whether the fire originated in his carelessness or from accidental causes, such as spontaneous combustion of the wool in the warehouse. Defendant's counsel attributed the fire to that cause. But there seems to be nothing in the evidence in the record to sustain his theory. And, however that may be, there was in the evidence of the case sufficient to warrant the Court in submitting it to the consideration of the jury.

There was, therefore, no error in denying the motion for a nonsuit, nor did the Court err in overruling objections which were made at the trial to the admission of evidence which tended to show the condition of the building at the time of the fire, and all the facts and circumstances connected with the fire. These were properly allowed to go to the jury for their consideration upon the issue submitted to them.

The Court may have erred in denying the defendant's motion to strike out the averment in the complaint, that "the defendant was the owner of and operated a railroad in the county," etc., but it was error without injury; for the fact that the defendant was in possession of the building and used it as a warehouse and depot in connection with its railroad, was proved in the case without objection; and it was inseparably connected with the evidence as to the use of the warehouse. We can not, therefore, perceive how the averment of the fact in the complaint tended to "irritate and excite the prejudices of the jury against the defendant." There is nothing in the record suggestive even of the existence of such prejudices; and nothing to overcome the presumption that the verdict

was a fair expression of judicial opinion warranted by the evidence, submitted to the jury for their consideration.

Some parts of the charge of the Court may be subject to verbal criticisms, but we see nothing in it inharmonious or misleading. Taken as a whole it fairly submitted the case to the jury; and under such circumstances the verdict will not be disturbed for mere inaccuracies or errors, from which no possible injury could have resulted to the defendant.

The newly discovered evidence upon which the defendant asked for a new trial was cumulative.

We can not say that the damages given by the jury are excessive, or appear to have been given under the influence of passion or prejudice.

No error prejudicial to the defendant appearing in the record, the judgment and order appealed from are affirmed.

ROSS, SHARPSTEIN, and MYRICK, JJ., concurred.

MCKINSTRY, J., concurred in the judgment.