## STONE v. CASE.

No. 1650.   Opinion Filed May 14, 1912.

(124 Pac. 960.)

1. **BAILMENT—Action Between Parties—Burden of Proof.** In an action against a bailee for loss of property, where it is alleged that the loss was occasioned by a fire, and that such fire was caused by the negligence of bailee, it is error to instruct the jury that the burden is upon the defendant to prove that he was not negligent. In such case the burden is upon the plaintiff to prove a prima facie case; and such prima facie case must outweigh an affirmative defense, if such defense is interposed, before plaintiff is entitled to recover.

2. **ACTION—Joinder of Causes—"Cause of Action"—"Subject of Action"—"Transaction."** In section 5623 of the statute (Comp. Laws 1909), which provides that several causes of action may be united in the same petition, where they arise out of the same transaction, or transactions connected with the same subject of action, the term "cause of action" means a redressible wrong. Its elements being the wrong and the relief provided. The "subject of action" is a primary right and its infringement. The term "transaction" is used in the first clause with reference to, and expressive of, all the acts, or groups of related acts, which go to make up one entire project, system, or deal, referred to as a "transaction," and in the latter clause it is used to include and

Stone v. Case.

encompass only such acts, or groups of acts, as in themselves constitute separate, redressible wrongs; and such wrongs (transactions) are connected with the same "subject of action" whenever they affect, grow out of, or constitute separate infringements of, the same primary right.

3. **SAME—Single and Entire Cause of Action.** The petition herein alleges that the loss of the piano, valued at $400. was caused by defendant's negligence in failing to have the piano insured for this amount, as he had agreed to do, and by his negligence, which caused the fire in which the piano was destroyed, and asked for judgment for $400. **Held**, there was but one cause of action stated, and therefore no misjoinder.

(Syllabus by Harrison, C.)

*Error from Pontotoc County Court;*
*Arden L. Bullock, Special Judge.*

Action by Gertrude Case against Duke Stone for loss of a piano. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This action was begun March 30, 1909, upon a petition alleging, in substance, that in January, 1907, plaintiff, owner of a piano, rented or leased it to defendant for $2.50 per month; that thereafter, in September, 1907, she requested defendant to procure insurance in the sum of $400 on the piano, and to take the amount of premium charged for the insurance from the rents due her for the use of same; that defendant agreed to procure the insurance and deduct the amount of premium from the rents due to plaintiff; that defendant failed to procure said insurance as he had agreed to do, and that in April, 1908, the defendant's residence was destroyed by fire, and the piano destroyed therein; that her loss thereby was $400, as she had a policy of $400 on same, which, by defendant's failure to reinsure, was allowed to lapse. She further alleged that the loss of the piano was caused by the negligence of defendant, which resulted in the burning of defendant's residence and plaintiff's piano, and that by reason of such negligence she was damaged in the sum of $400. Wherefore she prayed judgment for $400 and costs.

Defendant demurred to the petition, on the ground of an improper joinder of causes of action, which demurrer was overruled. Thereupon defendant filed motion to require plaintiff

to make her petition more definite and certain by stating in what defendant's acts of negligence consisted. This motion being overruled and exceptions saved, the defendant thereupon answered by general denial of the allegations in the petition. Upon the issues thus joined, a trial was had September 8, 1909, resulting in a verdict and judgment in favor of plaintiff for the sum of $100. Upon motion of defendant, the verdict and judgment was set aside, and a new trial granted.

At a subsequent term, January, 1910, a second trial was had before Arden L. Bullock, selected as special judge by agreement of the parties. Upon the calling of the case for trial, defendant renewed his demurrer to the petition, which the court refused to hear, because it had been overruled by the presiding judge at the previous trial. Thereupon the defendant excepted and moved the court that plaintiff be required to elect which count in the petition she relied on for recovery. This motion being overruled and excepted to by defendant, a jury was impaneled, and the cause proceeded to trial. Defendant objected to the introduction of testimony, for the reason that the petition failed to state facts sufficient to constitute a cause of action, which objection was overruled by the court and excepted to by defendant.

During the course of the trial, the plaintiff introduced testimony to show that the alleged fire was caused by the negligence of Hattie Crow, the servant of defendant's wife; that such negligence consisted in the use of gasoline in scrubbing the matting in the room where the fire started. Defendant objected to this testimony, because the petition contained no allegation that the fire was caused by the negligence of the girl. Whereupon plaintiff, over the objection of defendant, was permitted to amend her petition by alleging that the acts of negligence which caused the fire were the acts of Hattie Crow, the servant of defendant's wife, and that such acts were committed while in the discharge of her duties as a servant. The amendment does not appear to have been made to the petition; that is, the petition contains no such amendment, but upon the court's overruling defendant's objection to the amendment plaintiff's counsel stated: "By us-

ing gasoline in cleaning carpet or matting in a room of plain-tiff's residence, which was closed and warm at the time, and while there was fire in the grate or fireplace of such room, causing gas or gasoline to ignite, and thereby burning and destroying the residence in which the plaintiff's piano was at the time of the fire." This statement of plaintiff's counsel got into the record, but is not written into the petition. However, it seems to have been treated as an amendment, and the court permitted testi-mony in support of same. Both parties introduced testimony, and at the close thereof the cause was submitted to the jury un-der the instructions of the court, resulting in a verdict in favor of plaintiff in the sum of $325. Defendant's motion for a new trial being overruled, judgment was rendered on the verdict, from which judgment and order overruling motion for a new trial, defendant brings the cause here, complaining of fifteen separate assignments of error, which, in substance, are: A misjoinder of causes of action; that the petition was too indefinite and un-certain; that a cause of action was not stated; that the negli-gence was caused by his wife, if at all, and that he was not re-sponsible for her acts of negligence; and that the court erred in the instructions.

Duke Stone and Leslie Maxey, for plaintiff in error.

J. F. McKeel and Bledsoe & Little, for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). In considering these objections, we will first take up the instructions of the court. After stating the issues to the jury, the court, in paragraph 9 of his charge, says:

"You are instructed, gentlemen of the jury, that the burden of proof is upon the defendant to show that he exercised reason-able care in the protection of the piano, and that the same was not destroyed through his ordinary negligence, or the ordinary negligence of his servants, agents, or employees, while acting within the scope of their employment."

This instruction places a greater burden upon the defend-ant than is placed upon him by the settled rule of law in such cases. There is a universal and unvarying rule of law that the burden is upon the plaintiff to allege and establish the facts upon

which he relies for recovery; to allege and establish such facts as will *entitle* him to a recovery. The underlying principle in which it is planted, and from which it has had its growth, constitutes one of the pillars of civil jurisprudence. It is true that in some classes of actions, as in an action against a bailee for hire—and the case at bar is governed by the law on bailments—there has been a seeming variation or exception to the rule; but in such cases, while the rule appears to be changed, and while there seems to be a modification or exception, yet, when the constituent facts of the entire case are separated and analyzed and the governing principle discovered, it will be observed that the rule is unchanged. For example, where a bailee fails to deliver the property, or where the bailor makes demand for a return of the property and the bailee fails or refuses to return or deliver the same, in such case, the law presumes a liability on the part of the bailee—a presumption from which he must free himself. But such presumption arises from the fact constituting a *prima facie* case against him, and the burden is upon the bailor to establish such facts; that is, he must show that there is a bailment, that he is the bailor, must show what the property consists of, that he is entitled to return of same, and that the bailee refuses to make such return. When this is done, a *prima facie* case is made, and the law presumes a liability on the part of the bailee. Then, if he has a defense which relieves him of liability, the burden is upon him to establish such defense; that is, the law must be satisfied of the existence of such facts as will relieve him of liability, and proof of such facts rests with him. The law must be convinced by his efforts that a defense exists. The burden of proving such issue is upon him. Otherwise the presumption arising from a *prima facie* case fixes his liability. But, in such case, the rule placing the burden upon the plaintiff to prove the facts entitling him to recover, is unchanged. It merely admits the application, or rather invokes the aid of, another well-settled rule that an affirmative defense must be proved by the person who asserts it. As, in a suit on a promissory note, where the maker sets up the defense of fraud, the burden is upon him to prove such fraud. When, however,

such defense is interposed and its existence proven, the defendant has discharged himself of the burden of procedure, and the burden of the entire case is upon the plaintiff. It is upon him, from the whole case and from all the facts and circumstances, to prove his right of recovery. In other words, his *prima facie* case must outweigh the affirmative defense.

The instruction herein complained of, either standing alone or considered in connection with the entire charge, has the effect of arbitrarily assuming a *prima facie* case and a consequent liability on the part. of defendant, and of placing the burden upon him to prove he was not liable. This was error. It should have been left to the jury to determine from the evidence whether a *prima facie* case had been made, and whether from all the facts and circumstances the defendant was liable. The effect of this instruction is still more harmful when considered under the facts alleged in the second paragraph of the petition. In the second count, if a cause of action is stated at all, the plaintiff's right of recovery is predicated solely upon defendant's negligence. It states a condition of facts which relieves defendant of the presumption of negligence ordinarily arising from a *prima facie* case of failure to return the property. It alleges that the loss was caused by fire, and that the fire was caused by defendant's negligence. In alleging a loss by fire, the defendant was relieved of the presumption of negligence, and in alleging that. the fire was caused by negligence, plaintiff assumed the burden of proving such negligence. Her right of recovery is based upon defendant's negligence. She must prove this negligence in order to fix a liability on him. For, under the great weight of authority, and under the light of reason, where the loss of bailor's property is occasioned by fire, robbery, burglary, or theft, or by any means which would ordinarily and reasonably seem to be unavoidable, the bailee is relieved of the presumption of negligence in the loss, and of the consequent burden of interposing an affirmative defense. This doctrine is followed in the following authorities:

In the case of *Wilson v. Southern City R. Co.*, 62 Cal. 164, which was an action against a warehouseman for damage done

to a quantity of wool, which had been stored in the warehouse, Mr. Justice McKee of the Supreme Court of California, in rendering the opinion of the court, says:

"A *prima facie* case of negligence is made out against a warehouseman, who refuses to deliver property stored with him, upon proof of demand and refusal. Upon such proof alone the burden is on him to account for the property; otherwise he shall be deemed to have converted it to his own use. But if it appears that the property, when demanded, was consumed by fire, the burden of proof is then on the bailor to show that the fire was the result of the negligence of the warehouseman. *Harris v. Packwood,* 3 Taunt. 264; *Beardslee v. Richardson,* 11 Wend. [N. Y.] 26 [25 Am. Dec. 596]; *Browne v. Johnson,* 29 Tex. 43; *Lamb v. Camden & Amboy R. Co.* [46 N. Y. 271, 7 Am. Rep. 327]; [*Jackson v. Sac. Val. R. Co.*] 23 Cal. 269. The negligence of the appellant, as the proximate cause of the loss of the property by fire, thus became the essential fact to recovery; and the burden of proof was upon the plaintiff in the action. It was incumbent on him to prove that the defendant had, by some act of omission, violated some duty, by reason of which the fire originated; or that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted or contributed to cause or permit the fire by which the property was destroyed."

In the case of *James v. Orrell,* 68 Ark. 284, 57 S. W. 931, 82 Am. St. Rep. 293, which was an action to recover damages for certain cotton, some of which had been stolen and some destroyed by fire, Mr. Justice Hughes, in delivering the opinion of the Supreme Court of Arkansas, says:

"There was prejudicial error in the court's instruction to the jury as to the burden of proof. It told the jury that, 'the loss of the cotton being admitted, the burden is upon the defendant to show that such loss was not caused by the negligence of him or his servants; and, unless you find by a preponderance of the evidence the loss was not caused by such negligence, your verdict will be for the plaintiffs.' This is error for which the judgment must be reversed. Judge Story, in his work on Bailments (8th Ed.) sec. 210, says: 'With certain exceptions, which will hereafter be taken notice of, as to innkeepers and common carriers, it would seem that the burden of the proof of negligence is on the bailor, and proof merely of the loss is not sufficient to put the bailee on his defense.' 'This has been ruled in a

case against a depositary for hire, where the goods bailed were stolen by his servant. Section 410a: 'Properly understood, it seems to be clear that the burden of proof must always be upon the plaintiff to make out all the facts upon which his case rests, and, as negligence is the foundation of the action between bailor and bailee, that the duty of proving such negligence is on the former, rather than that of disproving it on the latter. That the burden is on the plaintiff in other cases founded on negligence is now quite generally agreed. * * * Negligence is no more to be presumed in such cases than in any other.' There is some discrepancy in the cases, but 'the best-considered modern authorities, in which the question has been most directly discussed and decided, support the views above expressed.' Story, Bailm. secs. 213, 278, 339, 454, and authorities, notes 3, 4. 'All bailees, with or without a special contract, are *prima facie* excused when they show loss or injury by act of God or of public enemies, and ordinary bailees in a variety of lesser instances, such as fire, loss by mobs, or robbery.' *Wilson v. Southern City R. Co.*, 62 Cal. 164, [*supra*], as to loss by fire; 3 Am. & Eng. Enc. Law, pp. 750, 751, and cases cited. Negligence is an affirmative fact, to be established by proof. *Rutledge v. Railway Co.* [123 Mo. 121], 24 S. W. 1053. The burden of sustaining the affirmative of an issue involved in an action is upon the party alleging the facts constituting the issue. *Heinemann v. Heard*, 62 N. Y. 448. The appellant asked the court to instruct the jury that the burden as to negligence was on the plaintiffs, which he refused to do. This was error. For the errors indicated, the judgment is reversed, and the cause remanded for a new trial."

In the case of *Claflin v. Meyer*, 75 N. Y. 260, 31 Am. Rep. 467, in an action against a warehouseman for goods lost by burglary, Mr. Justice Hand, speaking for the Supreme Court of that state, says:

"* * * For the evidence is such that, if it were incumbent upon the defendant to prove himself free from all negligence causing or attending upon the burglary, and not merely to leave the case as consistent with due care as with the want of it, it is clear that the judgment, so far as it adjudges his liability for the goods, must be affirmed, as we cannot say that such proof of a conclusive character was given. But the law as to the burden of proof is pretty well settled to the contrary. Upon its appearing that the goods were lost by a burglary committed upon the defendant's warehouse, it was for the plaintiffs to establish affirmatively that such burglary was occasioned, or was not pre-

vented by reason of, some negligence or omission of due care on the part of the warehouseman."

In *Higman v. Camody,* 112 Ala. 267, 20 South. 480, 57 Am. St. Rep. 33, which was an action against the bailee for hire, Mr. Justice McClellan, in delivering the opinion of the Supreme Court of Alabama, says:

"In an action by a bailor against a bailee for hire to recover for the destruction of, or injury to, the property through the negligence of the latter, the burden of proof is, first, upon the bailor to show the bailment, the condition in which the bailee took the property, and that he returned it in a damaged condition, or did not return it at all; and, if the property was in good condition for the uses of the bailment when delivered, and was returned in a damaged condition, or not at all, the burden of proof shifts to the bailee to show a cause producing the injury which, *prima facie,* did not arise or result from or operate on account of a want of ordinary care on his part. This being shown, the burden of proof shifts back to the bailor to affirmatively show some negligence on the part of the bailee producing the injury complained of."

The above authorities support the rule announced herein, and are in harmony with the decided weight of authorities, both text-books and decisions.

The next question suggesting itself is whether the petition contains a misjoinder of causes of action. Manifestly there was an attempt to state two causes of action. The case was tried on this theory. One on a contract to have the piano insured, the other for negligence in a contract of bailment for hire; the two contracts being separate and distinct, made at different times, and based upon wholly different considerations. But as to whether there was a misjoinder, or a joinder at all, depends upon the meaning of section 5623, Comp. Laws 1909, which reads:

"Joinder of Actions.—The plaintiff may unite several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, where they all arise out of either one of the following classes: 1. The same transaction, or transactions, connected with the same subject of action. *  *  * "

If, in fact, there are two causes of action stated, or attempted to be stated, in the petition, such causes of action could not prop-

erly be joined under any of the provisions of the foregoing stat-
ute, except the subdivision above quoted. They must arise out of
the same transaction, or transactions connected with the same
subject of action; and here we are confronted with the difficulty.
of determining just what is meant by, or what *may* be included
in, or what *must* be excluded from, this provision of statute, or
what limitations may be placed upon, or what significance given
to, the terms, "cause of action," "transaction," "subject of ac-
tion," or "transactions connected with the same subject of ac-
tion." Herein lies a problem hitherto unsolved by the courts,
text-writers, or lexicographers. Though this provision has been
in the Code for more than 60 years, and though many attempts
have been made to do so, no one has succeeded in reaching a
satisfactory solution; nor has any one succeeded in giving a
standard definition, or in deducing a rule of universal application.
The terms, "cause of action" and "transaction," have been de-
fined with some degree of clearness; but all the courts and text-
writers have floundered when they came to the term, "transac-
tions connected with the same subject of action." The char-
acter given this term by the courts is wonderfully expansive and
equally contractive. It has been made to expand to the imagina-
tion of one court and as readily contract to the narrower views
of another. In discussing this provision of the Code, Justice
Comstock of the New York Court of Appeals, in *N. Y. & N. H.
R. Co. v. Schuyler,* 17 N. Y. 592, says:

"The authors of the Code, in framing this and most of its
other provisions, appear to have had some remote knowledge of
what the previous law had been. This provision, as it now
stands, was introduced in the amendment of 1852, because the
successive Codes of 1848, 1849, and 1851, with characteristic per-
spicacity, had in effect abrogated equity jurisdiction in many im-
portant cases by failing to provide for a union of subjects and
parties in one suit indispensable to its exercise. This amend-
ment, therefore, was not designed to introduce any novelty in
pleading and practice. Its language is, I think, well chosen for
the purpose intended, because it is so obscure and so general as
to justify the interpretation which shall be found most conven-
ient and best calculated to promote the ends of justice. It is
certainly impossible to extract from a provision so loose, and

yet so comprehensive, any rules less liberal than those which have long prevailed in courts of equity."

We cannot concur in this view of the distinguished jurist. When reduced to its essence, it simply means that the Legislature intended to leave all questions arising under this provision of the Code to the individual opinion of the judge of the court, a principle as dangerous to the administration of justice as to have no law at all, and, perhaps, as far from legislative intent as anything ever was from any legislative body. Why have a compilation of laws defining the rights of parties, and Code prescribing rules of procedure by which such rights must be determined, or why have a statute at all, if it is safer to have the rights of parties circumscribed by, and dealt out according to, the *personal* views of one man, who happened to be the judge of the court? The mere fact that a Code exists refutes this view, as do the possibilities of such views necessitate the enactment of a Code. Mr. Pomeroy, on page 480 of his work on Code Remedies, in discussing this same opinion, says:

"Mr. Justice Comstock plainly regards it as unnecessary, if not impossible, to attempt a definition of the terms employed in the passage which he quotes and would leave each case to be decided upon its own circumstances. This is undoubtedly the easier method for the courts to pursue; but suitors as well as the profession have a right to ask from them some rules by which a reasonable degree of certainty as to the correct manner of bringing and conducting causes shall be secured."

In further discussing this and similar views, the same author, on page 479, says:

"Until such definition is made, each case must be decided upon its own circumstances, in a mere empirical method, so that the confusion and uncertainty will continue, and even increase, in the place of the uniformity and certainty in the practice which the profession and suitors have the right to demand. In short, the courts must break away from the judicial habit which has of late years grown upon them, and must be willing to attempt the discussion and settlement of definitions, principles, and doctrines, connected with the reformed procedure, in a general and comprehensive form."

As a determination of the question before us will be materially facilitated by an understanding of what was intended and

what result was expected by the adoption of the Code, it becomes necessary to make a brief inquiry in this direction.

In Baylies' Code Pleading (section 1), the author says:

"It was the intention of the Legislature to create a system of practice so simple in its details and requirements that under it a person unskilled in the practice of the law might act as his own attorney in a court of record, and conduct his cause therein, from its commencement to its close, with no greater hindrance from the technical rules of procedure than would be experienced in the trial of the cause before a justice of the peace. A simple, informal system of pleading became an essential part of this scheme, as well for the protection of the court as the convenience of the litigant."

This view seems to be the other extreme. Possibly a clearer knowledge of what was *intended* might be derived from what was *done*. In 1848 the Legislature of the state of New York passed an act entitled "An act to simplify and abridge the practice, pleadings and proceedings of the courts of this state." Laws 1848, c. 379. This act was designated the "Code of Procedure," which, in substance, has been adopted by most of the states, including our own, and which Code provides:

"All forms of pleading heretofore existing are abolished, and hereafter the forms of pleading in civil actions in courts of record, and the rules by which the sufficiency of the pleadings is to be determined, are those prescribed by this Code."

This being the thing *done,* the presumption is that this was the thing *intended* to be done; that is, that the abolition of all distinctions between actions at law and suits in equity and the forms of all such actions and suits, and of all the technical forms of pleading theretofore existing under the common law, was intended, and having abolished such distinctions and forms by such act, and having prescribed the rules of procedure in civil actions in courts of record, and having prescribed what causes of action might be united in the same suit, and having said in the above section of statutes, "and the rules by which the sufficiency of the pleadings is to be determined, are those prescribed by this Code," we think the intention of the Legislature is made unmistakably clear, and that the courts must be governed by such rules in determining the rights of litigants. Also, in adopt-

ing such Code and in prescribing the rules of procedure and defining the classes of action which might be united in the same suit, the reasonable presumption is that the language and terms used, viz., "cause of action," "the same transaction," "transactions connected with the same subject of action," were chosen because of the legal significance theretofore given such language and terms by the courts; because of the significance—meanings—which they had in law; because of the offices they had in law.

Anderson's Law Dictionary defines a cause of action as:

"The right which a party has to institute and carry through a proceeding. The act on the part of the defendant which gives the plaintiff his cause of complaint. Jurists have found it difficult to define a cause of action. It may be said to be composed of the right of the plaintiff and the obligation, duty or wrong of the defendant. A wrong committed or threatened."

Enc. Pl. & Pr. vol. 1, defines it as follows:

"A 'cause of action' is generally held to be a union of the right of the plaintiff and its infringement by the defendant. * * * Some authorities hold that the cause of action is the act or delict on the part of the defendant which gives the plaintiff his cause of complaint; they reject, as unnecessary to the definition, the right of plaintiff."

In Bliss on Code Pleading (page 2), the author says:

"As the action is a judicial proceeding for the redress or prevention of a wrong, the cause of action must necessarily be the wrong which is committed or threatened. * * *"

In its legal and logical significance, a cause of action is a wrong for which a remedy is prescribed by law or afforded in equity. The *delict* and the remedy are the primary elements. These elements are indispensable. The wrong, *per se,* the act of infringement, if it be a wrong for which a *remedy* is afforded, constitutes the *cause of action.*

The existence of a primary right is no more a part of the cause of action than the existence of the possessor of such right, or the existence of his right to exist. The possessor of the right might live a century and the right be possessed during the entire time, and yet no part of a cause of action, in the sense of being a ground for a suit, exists until the right is infringed upon, until a wrong is committed. When the wrong is commit-

ted, the first element of a cause of action springs into existence; and if it be a wrong which is forbidden by law, or one for which redress is afforded by law or in equity, then the cause of action is complete. There is no union of the primary right and the wrong. It is not the primary right and its infringement which unite; but it is the wrong and the right to redress which unite to constitute a cause of action. Bliss on Code Pleading (section 2) says: "We sue because of the wrong, to redress or protect it." We think this is sufficient, and that it leaves it perfectly clear as to what is meant by the term "cause of action." The term "action" is defined by statute. Section 5536, Comp. Laws, 1909.

We will next take up the term "transaction" and ascertain what significance it had in the courts and text-books. In this connection, it may be observed that, although New York is the parent state of the Code system, yet the courts of that state have failed to give a satisfactory definition of the term. They have, in fact, with practical unanimity, confessed an inability to do so. This is probably due to the fact that the earlier jurists viewed the Code procedure through the common-law lenses, as it were, instead of through the lenses of the Code language, and that the precedents thus established have since been followed. But in the states which have more recently adopted the Code system, and substantially the same Code, the courts, having in a measure grown up under the system, have been able to read the common-law terms through the Code language, and have thereby been enabled to more correctly interpret the meaning of such terms.

Pomeroy adopts the definition given by Worcester, viz.: "The act of transacting or conducting any business; negotiations; management; proceeding." Then, after discussing the term in connection with his views as to what are the elements of a cause of action, he says:

"It is clear that every event affecting two persons is not necessarily a 'transaction,' within the meaning of the statute; indeed, the word, as used in common speech, has no signification. 'Transaction' implies mutuality, something done by both in concert, in which each takes some part."

Bliss on Code Pleading (4th Ed.) sec. 125, says:

"'Transaction' is a broader term than 'contract,' including not only that, but any occurrence between parties that may become the foundation of an action."

Justice Marshall of the Supreme Court of Wisconsin, in *Emerson v. Nash*, 124 Wis. 369, 102 N. W. 921, 70 L. R. A. 326, 109 Am. St. Rep. 944, defines the term thus:

"Any event in which two or more persons are actors, involving a right which may presently or by what may approximately occur in respect thereto be violated, creating a redressible wrong, is a 'transaction,' within the meaning of the statute."

But the elements of the term are summarized and their essence tersely stated by Justice Valentine, in *Scarborough v. Smith*, 18 Kan. 406, thus:

"* * * Whatever may be done by one person which affects another's rights, and out of which a cause of action may arise," is a "transaction."

This definition is adopted as a standard by both Anderson and Black in their Law Dictionaries, and is given in Words and Phrases.

It must be observed, however, that the term has two distinct meanings in law; that it is used for two distinct purposes: One when used as expressive of an entire scheme, system, project, or business deal; the other when used to encompass the acts, and only such acts, or group of acts, as constitute a cause of action. All the connected or dependent acts, which constitute one entire system or deal, may properly be referred to as a "transaction" in one sense of the term, in the sense it is used in the first clause of the statutes, and yet within that one transaction may be several acts, or groups of acts, which constitute a cause of action, and each such act, or group of acts, may properly be referred to as a "transaction" in the other sense of the term, in the sense it is used in the second clause of the statute. Now, in that section of the Code which provides that plaintiff may unite several causes of action in the same petition, where they arise out of the same transaction, the term is there used as expressive of one entire system of acts, or one entire project or deal, and not in the sense of encompassing a group of acts which

constitute a cause of action. To use the term in the latter sense would render it an absurdity. It would mean merely that the plaintiff may unite several causes of action if they arise out of the same cause of action. But the use of the term in the former sense renders it practicable for both the pleader and the court to determine, not only what acts or chain of circumstances go to make up the entire deal or system, which is termed a transaction, but also to determine just what act, or group of acts, included within or arising out of the "transaction" may constitute a "cause of action."

The term, "transactions connected with the same subject of action," however, has been the source of more confusion to the courts than either of the other terms used in the Code. This confusion is shown, by the comments of the courts and text-writers, to have arisen out of the failure to discern and distinguish the primary elements of a cause of action, and a confounding of the terms "cause of action" and "subject of action," and a failure to observe the two distinct offices which the term "transaction" has in law.

The clearest and most comprehensive analysis of these terms that we have been able to find is given by Justice Valentine, in *Scarborough v. Smith*, 18 Kan. 399. The definition given by Justice Valentine of a "subject" of action is in accord with, and is supported by, our statutory definition of the term "action."

Section 5536, Comp. Laws 1909, defines an action as follows:

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

It will be observed that although this statute contains the language, "for the enforcement or protection of a right," yet the central idea of the entire definition is the redress sought for an infringement of the right—the relief for the wrong done to the right. This right and its infringement is what the action is about. It is the subject of the action. The primary right is an element of the subject of action, and its infringement is an ele-

ment of the cause of action; but each term requires an additional component element to make it complete. The primary right and the wrong are the elements of the subject of action. The wrong and the right to redress are the elements of a cause of action. There can be no cause of action, unless there is a wrong for which redress is afforded. Nor can there be a subject of action, unless there is a right and a wrong done to it. The right might exist for ages, but is not a subject of action until it is infringed upon. The wrong might be continuous, but is not a cause of action, unless relief is afforded. Hence the component parts of the subject of action are the primary right and its infringement; while the elements of the cause of action are the wrong and the right to redress. Whenever these two elements exist, there is a cause of action, and the basic element of such cause of action grows out of an infringement of some primary right. And each distinct act of infringement of the one primary right constitutes a "transaction," within the meaning of the statute referring to transactions connected with the same subject of action. For, of course, every wrong done to the one primary right is, in a sense, connected with such right, and in this clause of the statute the term "transaction" is used to encompass the act or group of acts which, in themselves, of themselves, constitute the wrong, and is not used in the same sense, or for the same purpose, as when used in the clause, "causes of action arising out of the same transaction"; for in this clause the term is used expressive of the whole system of acts, contracts, or deals which go to make up the transaction.

Now, keeping in mind that the subject of action is the primary right and its infringement, that a cause of action is the wrong and the right to redress, that the term "transaction" is used in the first clause of the statute to include all the acts of one entire system or project, and that it is used in the latter clause to encompass only the acts which constitute the wrong, and that such wrongs are connected with the same subject of action whenever they grow out of, or affect, one existing, primary right, it seems to us that the pleader and the courts should be able

to properly determine when two or more causes of action may be joined in the same petition.

In the case at bar, there are two distinct wrongs alleged, or attempted to be alleged. One a failure to fulfill a contract to have the piano insured; the other a negligence in the burning of the piano. Each separate wrong constitutes one element of a separate cause of action, and each constitutes a "transaction connected with the same subject of action"; the subject of action being the plaintiff's right to have the piano cared for and the separate infringements of such right by defendant.

But, while two distinct wrongs are alleged, and while either wrong, standing alone, would constitute a cause of action, yet, when both are joined in the same petition, they cannot constitute two causes of action, because there is no relief provided. There are two wrongs, but only one remedy—one reparation. The whole loss, or entire damage, is asked for in each case. A recovery in one would preclude a right of recovery in the other. The loss or damage sustained is the value of the piano. This value cannot be recovered twice. The law does not afford double relief; hence there cannot be two causes of action, where there is an absence of one element of a cause of action—the relief or redress.

It is plain, therefore, that there was not a misjoinder in the case at bar, as there was but one cause of action stated. We believe, however, that the act of negligence is too indefinitely stated to admit of proof necessary to found a judgment upon, and that the court erred in overruling defendant's motion to make the petition more definite and certain in this particular, and erred in admitting testimony without an amendment of the petition.

It is also contended by defendant, Stone, that, if the burning of the piano was the result of negligence, it was the negligence of his wife, and that he (the husband) would not be held responsible; but we cannot concur in this view.

However, for the reasons herein given, the judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.