Wells H. BOYLES, doing business as Clinton Transfer & Storage Company, Plaintiff in Error,

v.

Frank CAMPBELL and Marion Campbell, Defendants in Error.

No. 40821.

Supreme Court of Oklahoma.

Sept. 13, 1966.

As Corrected Oct. 25, 1966.

Rehearing Denied Oct. 25, 1966.

Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Arney, Barker & Donley, Clinton, for defendants in error.

### PER CURIAM.

This appeal is brought by the plaintiff in error, defendant below, from the judgment of the District Court of Custer County, in favor of the defendant in error, plaintiff below, which parties will be referred to by their trial court designation, in an action by plaintiff for damages to personal property as a result of its being destroyed by fire while in storage under a bailment contract with defendant.

Plaintiffs allege in their petition that on or about June 11, 1962, plaintiffs hired defendant to pick up and store at defendants' warehouse at Clinton, Oklahoma, certain items of household furniture, that defendants did store their household goods and that on September 3rd, 1962, a fire occurred at the warehouse and that thereafter plaintiffs demanded delivery of their personal property but were advised by defendant that the property had been destroyed by fire and could not be delivered, and that the reasonable value of the property was Two Thousand Five Hundred Twenty Six Dollars Fifty Cents ($2,526.50) for which sum plaintiffs prayed for judgment against the defendant.

Defendant filed an answer which admitted that plaintiffs property was stored in the warehouse owned by the defendant known as Clinton Transfer & Storage Company on September 3rd, 1962, and further admitted that the household goods were destroyed by fire on September 3rd, 1962, and denied all other allegations of the petition. For affirmative defense the defendant alleged that the household goods of plaintiffs were placed in storage under a warehouse receipt and inventory which provided among other terms and conditions as follows, to-wit:

"The Company shall use reasonable care and diligence to protect property stored, but will not be responsible for ordinary wear and tear in handling nor for loss or damage to said goods stored, by moth, fire, rust or deterioration, acts of God or other causes beyond its control."

For further defense the said answer alleged that defendant used reasonable care and diligence to protect said personal property from loss or damage thereto by fire and that the fire which did occur on September 3rd, 1962, destroying plaintiff's property was not caused in whole or in part by any lack of care or diligence on the part of the defendant or any of his servants, agents, or employees.

Plaintiff responded by a reply of a general denial to the answer of defendant.

Upon trial the jury returned a verdict for the plaintiffs in the sum of Nine Hundred Forty One Dollars Sixty Five Cents ($941.-65) with six (6) per cent interest thereon from the 11th day of October, 1963, and the court rendered judgment on the verdict.

Defendant has perfected this appeal from the verdict and judgment and has lumped all of his assignments of error under one proposition to the effect that the judgment of the trial court is erroneous for the reason that the loss sustained by plaintiffs was not caused in whole or in part by any lack of reasonable care and diligence on the part of the defendant.

The specifications of error presented by the defendant requires an examination of the evidence concerning the condition of the warehouse where plaintiffs personal property was stored and the activities conducted therein on the date of the fire which caused the destruction of plaintiffs' personal property.

The warehouse was of brick construction facing south with a wooden shed with a tin roof constructed as a lean-to shed on the east side of the building approximately 10 to 12 feet in width and 20 feet long. The east part of the building was leased to the defendant and the west part of the building was sub-leased by the defendant to Albert Brothers, a beer distributor with an aisle or alley running east and west through the middle of the building to permit the beer

distributor to unload beer from a railroad car on a siding on the east side of the shed through an east door to the west side of the building.

On the day of the fire the beer distributor had four or five men unloading beer from the railroad car onto carts which were hauled through the wooden shed through the east door across the aisle to the west part of the building where the beer was stacked.

In support of the defendant's allegation that he used reasonable care to safeguard the personal property of plaintiff, John W. Boyles, son of the defendant and manager of the warehouse at the time of the fire, testified that fire extinguishers were placed in the building as prescribed by the Oklahoma Fire Prevention Bureau, the building was swept every day, that there were containers with metal tops to put debris in, that the warehouse floor was clean of any debris, and the building contained two (2) fire hoses of two inches in diameter with 50 feet of hose to each station, which hoses could reach to any portion of the building. He further testified that there were bales of chicken litter stored in the wooden shed on the east side of the building belonging to Boyles Produce. He also testified that the chicken litter was a fiber type material compressed in bales and stacked in the wooden shed.

Mr. Wells H. Boyles testified on direct examination that in addition to the foregoing fire preventative measures that the lighting had been checked regularly by an electrician and the there were "No Smoking" signs in the building. He further testified that he was in the produce business and that the chicken litter belonged to him and was stored in the wooden shed on the east side of the warehouse, that the litter was made from sugar cane plummage and was treated so that it would be noncombustible as it is used under open fires in brooder houses to start baby chicks and baby poults. On cross-examination he testified that the litter didn't burn at the time of the warehouse fire but was destroyed by water,

and that it was stored approximately 20 feet away from the hallway kept open to unload railroad cars and that the litter is wrapped by baling wire without any outside cover on it. He further testified that the door from the shed into the warehouse was made of wood covered with tin; that there was no partition separating the hallway from items stored along the hallway and that there were no flammable items such as paint or paint thinner in the warehouse and that such flammable items were not allowed to be stored in the warehouse. He further testified that the property stored by the plaintiff in the warehouse was covered with heavy craft paper and that it would have been possible for the men unloading the beer to have had access to the stored goods.

In rebuttal the plaintiff called the chief of the Clinton Fire Department who testified that he received the call to attend the fire at 6:05 P.M. and that when he arrived on the scene a few minutes after the first fire fighting equipment arrived the fire had burned through the roof and that it was definitely a hot fire, a fast burning fire. He further testified that he assisted in the investigation of the cause of the fire along with a special investigator from the National Board of Underwriters and a special investigator from the Oklahoma State Crime Bureau. During the investigation they found paint thinner, antifreeze, and case lots of oil stored in the warehouse. He further testified that the chicken litter was burning; that during the investigation they found that the east door leading from the wooden shed to the warehouse was a sliding wooden door; and that it was his opinion that the fire started in the shed on the east side of the warehouse and burned through the wooden door. He also discovered that the workmen unloading the beer had been smoking and that by process of elimination he concluded that the fire could only have been started by a cigarette.

■ Defendant contends that in an action against a bailee for hire for loss of the property bailed, the plaintiff makes a prima facie case by proving the bailment and loss

of the property and thereupon defendant has the burden of proceeding with the evidence to show he used ordinary care but the burden of proof is upon the plaintiff to prove by a preponderance of the evidence, after defendant has sustained his burden of proceeding with the evidence, all of the facts necessary for him to recover including the fact that defendant failed to use ordinary care for the preservation of the thing bailed. In support of this proposition defendant cites Standard Marine Ins. Co. v. Traders' Compress Co., 46 Okl. 356, 148 P. 1019, and Stone v. Case, 34 Okl. 5, 124 P. 960, 43 L.R.A.,N.S., 1168. The cited cases are distinguishable from the case at bar for the reason that in the cited cases the petition contained allegations of negligence on the part of the defendant. The plaintiff in the case at bar merely alleged that the property was destroyed by fire. Without a specific allegation of negligence on the part of the defendant the plaintiff need only prove the bailment and loss of the property. In the case of Forsythe v. Bradshaw, Okl., 348 P.2d 851, at page 854, we stated as follows:

"Plaintiff's petition contains no allegation of negligence on the part of defendant. Plaintiff elected to base his action on establishment of a bailment for hire and on the liability and obligation of the defendant as a bailee for hire. Under these circumstances plaintiff was not required to prove negligence on the part of the defendant to make a prima facie case."

■■ A bailee for hire must use at least ordinary care for the preservation of the thing bailed, 15 O.S.1961, § 466. The defendant attempted to show that he used all fire preventative techniques to avoid any possible fire and thereafter the plaintiff in rebuttal showed the existence of highly flammable material stored in the warehouse without any fire walls between it and the personal property of the plaintiff and showed that there was litter in the shed through which the workmen were transporting the beer and the existence of workmen smoking in the area of the litter. The defendant testified that the litter was treated so that it would not burn, however, the Fire Chief testified that the litter was burning at the time he arrived on the scene of the fire. There certainly was evidence sufficient to place the case in the hands of the jury to determine whether or not the defendant used ordinary care in safeguarding the property bailed and there are sufficient facts to sustain the finding of the jury.

■ The defendant in his brief contends that there was no evidence as to what caused the fire even though the Fire Chief testified that by a process of elimination he determined that the fire started on the dock on the east side of the building and that it could have been started by a man smoking. The men on the dock who were smoking were employees of Albert Brothers, the beer distributor, and defendant states that he had no control nor was he in any way responsible for their actions. Assuming this is true the jury could have determined that defendant failed to use ordinary care by permitting chicken litter to be stored in an area where workmen customarily unloaded the beer and one might also assume customarily smoked as workmen usually do; and the jury might also have determined that the defendant failed to use ordinary care by not having a door into the east warehouse that was fireproof. The defendant was in the business of providing storage space for the storage of personal property of the general public and he had a general duty to exercise ordinary care in providing storage space that was safe from fire.

■ From our examination of the entire record we conclude that there is evidence reasonably tending to support the verdict and the judgment rendered thereon. There was a conflict in the testimony and the jury determined the defendant was liable. A jury verdict and judgment based thereon will not be disturbed on appeal if there is any evidence reasonably tending to sustain the judgment. State of Oklahoma ex rel. State Insurance Fund v. Bone, Okl., 344 P.2d 562; City of Enid v. Reeser, Okl., 355 P.2d 407.

The Court acknowledges the services of Special Master WILLIAM H. MATTOON, who, with the aid and counsel of Special Masters JOHN M. LUTTRELL and ROBERT L. BAILEY, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BLACKBIRD, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.